**Stuart D. Jones**, OSB #842568
E-mail: stuart.jones@bullivant.com
BULLIVANT HOUSER BAILEY PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915
Attorneys for Defendant Affiliated FM
Insurance Company

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| COLUMBIA AIRCRAFT MANUFACTURING CORPORATION, Debtor-in-Possession,<br><br>      Plaintiff,<br><br>  v.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>      Defendant. | Civil No. 07-6357-TC<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE** |

## Table of Contents

                         **Page**

BACKGROUND FACTS AND CONTEXT ........................................................................ 1

MOTION ONE ............................................................................................................... 3

  A. The first-party relationship between an insurer and an insured is not a "special relationship" creating heightened duties under Oregon law. .................... 6

  B. CAM's allegation that Affiliated FM failed to pay CAM's business interruption claim does not support a tort claim. .................................................. 9

  C. CAM claims compensatory damages in tort that are not provided for under Oregon law. ........................................................................................................ 9

MOTION TWO ............................................................................................................ 10

  A. CAM does not allege any basis to find a "special relationship" existed that would create duties independent of the insurance contract actionable in tort. ...................................................................................................................... 10

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page i**

     B.  Failure to pay a first-party insurance claim is not a tort under Oregon law...........11

     C.  CAM does not allege Affiliated FM employed improper means to cause existing and prospective third parties not to do business with CAM....................11

     D.  CAM does not allege Affiliated FM employed improper means to interfere with third parties' existing or prospective economic relations with CAM. ...........12

     E.  The alleged difference in the value of CAM's business is not the measure of damages under a claim alleging tortious interference with economic relationships. ..................................................................................................15

MOTION THREE .....................................................................................................17

MOTION FOUR.........................................................................................................18

MOTION FIVE ..........................................................................................................20

MOTION SIX..............................................................................................................20

MOTION SEVEN .......................................................................................................23

MOTION EIGHT ........................................................................................................26

MOTION NINE...........................................................................................................27

MOTION TEN ............................................................................................................27

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page ii**

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Allstate Ins. Co. v. Breeden*,
  2007 WL 4480759 (D. Or., Dec. 17, 2007)................................................................. 5, 9, 28

*Bennett v. Farmers Ins. Co. of Oregon*,
  332 Or. 138, 26 P.3d 785 (2001) ............................................................................. 6, 7, 8

*Bob Godfrey Pontiac, Inc. v. Roloff*,
  291 Or. 318, 630 P.2d 840 (1981) .................................................................................... 12

*Calcagno v. Holcomb*,
  181 Or. 603, 185 P.2d 251 (1947) .................................................................................... 27

*Carpenter v. Land O'Lakes, Inc.*,
  985 F. Supp. 1249 (D. Or. 1997) ................................................................................. 24, 25

*Cascade Corp. v. American Home Assur. Corp.*,
  206 Or. App. 1, 135 P.3d 450 (2006), *appeal dismissed,* 342 Or. 645 (2007)....................... 24

*Chalmers v. Oregon Auto. Ins. Co.*,
  263 Or. 449, 502 P.2d 1378 (1972)................................................................................... 19

*Christofferson v. Church of Scientology*,
  57 Or. App. 203, 644 P.2d 577 (1982), *rev. denied*, 293 Or. 456 (1982), *cert. denied*,
  459 U.S. 1206 (1983)........................................................................................................ 28

*Conklin v. Karban Rock Inc.*,
  94 Or. App. 593, 767 P.2d 444, *rev. denied* 307 Or. 719 (1989) .......................................... 13

*Conway v. Pac. Univ.*,
  324 Or. 231, 924 P.2d 818 (1996) ...................................................................................... 6

*Emmis Television Broadcasting v. Travelcenters of America, Inc.*,
  2007 WL 2816211 (D. Or., Sept. 27, 2007)........................................................................ 21

*Employer's Fire Ins. v. Love-It Ice Cream*,
  64 Or. App. 784, 670 P.2d 160 (1988) ....................................................................... 5, 6, 11, 12

*Employers' Fire Ins. v. Love-It Ice Cream, supra*................................................................... 12

*Erickson Air-Crane Co. v. United Techs. Corp.*,
  87 Or. App. 577, 743 P.2d 747, *rev. denied,* 304 Or. 680 (1987) ......................................... 24

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page iii**

*Farris v. U.S. Fid. and Guar. Co.*,
    284 Or. 453, 587 P.2d 1015 (1978)..............................................................5, 11

*Fox v. Country Mutual Ins. Co.*,
    169 Or. App. 54, 7 P.3d 677 (2000), *rev. denied* 332 Or. 137 (2001) ...................16

*Georgetown Realty, Inc. v. The Home Ins. Co.*,
    313 Or. 97, 831 P.2d 7 (1992) ...............................................................................7

*Goddard v. Farmers Ins. Co. of Oregon*,
    177 Or. App. 621, 33 P.3d 1075, *rev. denied*, 332 Or. 631 (2001) .......................19

*Harris v. Pameco Corp.*,
    170 Or. App. 164, 12 P.3d 524 (2000)...................................................................28

*Interstate Production Credit v. Fireman's Fund*,
    788 F. Supp. 1530 (D. Or. 1992) ...........................................................................20

*L.H. Morris Electric, Inc. v. Hyundai Semiconductor America, Inc.*,
    203 Or App. 54, 125 P.3d 1 (2005), *rev. denied*, 341 Or. 140 (2006) ...................25

*Lewis v. Oregon Beauty Supply Co.*,
    302 Or. 616, 733 P.2d 430 (1987) .........................................................................16

*Linnton Plywood Assoc. v. Protection Mut. Ins. Co.*,
    760 F. Supp. 170 (D. Or. 1991) ...............................................................................2

*Mooney v. Johnson Cattle Co.*,
    291 Or. 709, 634 P.2d 1333 (1981).........................................................................13

*Newell v. Weston*,
    150 Or. App. 562, 946 P.2d 961 (1997), *rev. denied,* 327 Or. 317 (1998) ............20

*Northwest Natural Gas Co. v. Chase Gardens*,
    328 Or. 487, 982 P.2d 1117 (1999)..................................................................14, 15

*Protection Mut. Ins. Co. v. Mitsubishi Silicon America Corp.*,
    164 Or. App. 385, 992 P.2d 479 (1999), *rev. denied*, 330 Or. 331 (2000) .............2

*Public Market Co. v. Portland*,
    171 Or. 522, 130 P.2d 624, 138 P.2d 916 (1943) ...........................................21, 26

*Radcliffe v. Franklin Nat'l Ins.*,
    208 Or. 1, 298 P.2d 1002 (1956) ...........................................................................11

*Rossi v. State Farm Mr. Auto. Ins. Co.*,
    90 Or. App. 589, P.2d 1298, *rev. denied*, 306 Or. 414 (1988) .............................28

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page iv**

*Rotec Industries v. Mitsubishi Corp.*,
    181 F. Supp. 2d 1173 (D. Or. 2002), *aff'd* 348 F.3d 1116 (9th Cir. 2003) *cert. denied*
    541 U.S. 1063 (2004) ........................................................................................................... 14

*SDS Lumber Co. v. Allendale Mut. Ins. Co.*,
    563 F. Supp. 608 (D. Or. 1983) ............................................................................................ 22

*State Farm Mut. Auto. Ins. Co. v. Berg*,
    70 Or. App. 410, 689 P.2d 989 (1984), *rev. denied*, 298 Or. 553 (1985) ............................ 28

*Strader v. Grange Mut. Ins. Co.*,
    *supra*, 179 Or. App. at 335 ..................................................................................................... 8

*Straube v. Larson*,
    287 Or. 357, 600 P.2d 371 (1979) ........................................................................................ 14

*Thompson v. Frederico*,
    324 F. Supp. 2d 1152 (D. Or. 2004) (emphasis supplied; quoting *Strader v. Grange
    Mut. Ins. Co.*, 179 Or. App. 329, 333, 39 P.3d 903, *rev. denied*, 334 Or. 190 (2002)) ............ 6

*Top Service Body Shop v. Allstate Ins. Co.*,
    283 Or. 201, 582 P.2d 1365 (1978) .................................................................................. 13, 15

*Uptown Heights Associates v. Seafirst Corp.*,
    320 Or. 638, 891 P.2d 639 (1995) ........................................................................................ 15

*Vancouver Furniture Co. v. Industrial Indem. Co. of the Northwest*,
    74 Or. App. 642, 704 P.2d 518 (1985), *rev. denied,* 300 Or. 477 (1986) ............................ 18

*Wampler v. Palmerton*,
    250 Or. 65, 439 P.2d 601 (1968) .......................................................................................... 15

*Willamette Quarries v. Wodtli*,
    308 Or. 406, 781 P.2d 1196 (1989)....................................................................................... 14


STATUTES

ORS 82.010 ................................................................................................................ 20, 24, 26

ORS 82.010(1)(a): ................................................................................................................ 24

ORS 742.061 ................................................................................................................4, 17, 18, 19

ORS 742.061(1)................................................................................................................ 18

ORS 743.114 ................................................................................................................ 18, 19

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page v**

ORS 746.230(1)(f) ........................................................................................ 5, 6, 11, 12


**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ............................................................................3, 10, 17, 18

Fed. R. Civ. P. 12(f) ................................................... 18, 20, 23, 24, 26, 27, 29

Fed. R. Civ. P. 12b(6) ........................................................................................ 16

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page vi**

## BACKGROUND FACTS AND CONTEXT

The following are facts admitted in the Complaint.  Affiliated FM believes highlighting these facts at the outset  may be helpful to this Court's understanding of the dispute and provide context for the motions that follow:

1.      Plaintiff, Columbia Aircraft Manufacturing ("CAM"), makes small airplanes in Bend, Oregon.  Complaint, ¶¶ 1, 2.

2.      On June 12, 2006, CAM had parked sixty-six (66) of these aircraft outside on the tarmac near its manufacturing facility.  *Id.* at ¶ 10.

3.      The sixty-six aircraft were damaged in a hail storm on June 12, 2006.  *Id.* at ¶ 11.

4.      "All sixty-six * * * required repairs and repainting before they could be delivered to customers."  *Id.* at ¶ 11.

5.      Only thirty-three (33) of the sixty-six aircraft were insured by Defendant Affiliated FM Insurance Company ("Affiliated FM").  *Id.* at ¶ 10.

6.      CAM repaired the aircraft.  *Id.* at ¶ 11.

7.      CAM made a claim for the costs associated with the repairs of the 33 Affiliated FM-insured aircraft.  *Id.* at ¶ 13.

8.      CAM was paid $750,000 for the repair of the hail damage to the Affiliated FM-insured aircraft.  *Id.* at ¶ 13.

9.      CAM claimed amounts were owed under the business interruption coverage of the Affiliated FM policy.  *Id.* at ¶ 20.

10.     Affiliated FM paid CAM $341,385.  *Id.* at ¶ 25.

In addition to the facts set forth above, this Court is asked to note that CAM does not allege that Affiliated FM-insured equipment or other property used in the manufacturing process were damaged.  This distinguishes the underlying claim from those business interruption claims, for example, where part of a factory's assembly line damaged and the

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page 1**

insured is unable to produce goods.  "The nature of business interruption insurance is to indemnify the insured for any loss sustained because of the insured's inability to continue to use specified premises as a result of the destruction of the premises or parts thereof." *Linnton Plywood Assoc. v. Protection Mut. Ins. Co.*, 760 F. Supp. 170, 172 (D. Or. 1991).

Typically, business interruption coverage "is closely tied to the underlying property damage coverage.  That is, the endorsement usually covers business interruptions that result from physical loss or damage *to covered property* from a covered peril."  *Protection Mut. Ins. Co. v. Mitsubishi Silicon America Corp.*, 164 Or. App. 385, 388-89, 992 P.2d 479 (1999), *rev. denied*, 330 Or. 331 (2000).  Emphasis supplied.  The hail storm did not damage CAM's assembly line or prevent CAM from making airplanes.  Instead, CAM alleges that it was "forced to interrupt its normal operations" and "forced to divert resources from producing new airplanes * * * to repairing the hail-damaged aircraft."  Complaint, ¶¶ 11, 18.

This a dispute regarding the measurement of CAM's business interruption claim. CAM admits Affiliated FM paid amounts for property damage and business interruption, but asserts more is owed under the business interruption provisions of the insurance policy.  As CAM has selectively incorporated excerpts of policy language into its Complaint, there should be no concern about providing this Court the balance of the policy language from those provisions CAM selected.  In paragraph 15 of the Complaint, CAM incorporates language from the business interruption endorsement of the Affiliated FM policy.  CAM's allegation omits the portion of the policy language shown in **boldface type** that extends coverage for

> "the actual loss sustained by the Insured due to the necessary interruption of production or business operations or services during the period of interruption * * * **[d]irectly resulting from direct physical loss or damage, of the type insured by this policy to property not otherwise excluded, utilized by the insured, and at a location, but only to the extent the Insured is unable to make up production and resume or continue operations or services, partially or entirely, by utilizing damaged or undamaged property all whether or not at a location(s)."**

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 2**

Similarly, in paragraph 16 of the Complaint, CAM incorporates the language from the business interruption endorsement of the Affiliated FM policy but omits the policy language shown in **boldface type** that defines the "period of interruption" as

> "the period 'from the time of direct physical loss or damage **insured by this policy** to the time when, with due diligence and dispatch, physically lost or damaged property could be repaired or replaced and made ready for production or business operations or services under the same or equivalent physical operating conditions at the location that existed prior to such loss or damage.'"

Complaint, ¶ 16.

In addition to dispute regarding the measure of CAM's claimed business interruption loss, CAM alleges that Affiliated FM is liable in tort for an undisclosed amount of damages for allegedly failing to timely and fully pay the amount CAM claims was due under the terms of the insurance contract. Generally speaking, the Motions to Dismiss that follow point out why both of the tort claims should be dismissed from the case as a matter of law. The next group of motions are Motions to Strike asking this Court to delete requests for attorney fees and prejudgment interest where such are not recoverable under the circumstances alleged in the Complaint or are not recoverable as a matter of Oregon law.

## <u>MOTION ONE</u>

Affiliated FM moves this Court for dismissal of CAM's Second Claim for Relief found at paragraphs 43 to 49 of the Complaint. Fed. R. Civ. P. 12(b)(6). In these paragraphs, CAM attempts to state a claim that by "agreeing to insure" CAM under a policy that provides business interruption coverage, Affiliated FM

- "assumed a special duty of care toward" CAM, and

- when Affiliated FM "failed and refused to fully and timely pay the full value of [CAM's] Business Interruption loss,"

///

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 3**

- CAM was "forced to seek protection of the Bankruptcy Court and to sell its aircraft manufacturing business for a sale price that was less than the true value of [CAM's] business immediately prior to the hail storm."

Complaint, ¶¶ 46 (f), 47, 48.

CAM alleges this Affiliated FM's claims handling conduct was tortious bad faith and exposes Affiliated FM to liability for

- "damages to [CAM] in an amount to be proven at trial,"[1]

- "plus prejudgment interest at 9% annually running from January 31, 2007;" and

- "punitive damages of $30 million;" and,

- attorney fees.[2]

*Id.* at ¶¶ 48, 49; Prayer ¶¶ B, D, E, F.

CAM alleges that Affiliated FM

- "Failed to promptly and thoroughly investigate;"

- "Repeatedly and unnecessarily demand[ed] that [CAM] provide additional information;"

- "Failed to give due consideration to [CAM's] business plans and past performance in assessing [CAM's] Business Interruption claim;"

- "Failed to give due consideration to [CAM's] rebuttal of [Affiliated] FM's unreasonable coverage position;"

---

[1] In the prayer, CAM indicates that the damages "in an amount to be determined at trial" "include[e] but [are] not limited to the amount by which the sale price for the Company out of bankruptcy was less than the true value of the Company immediately before the hail storm [that] occurred on June 12, 2006." Complaint, Prayer ¶ B.

[2] As discussed below, CAM expressly incorporates this purported tort claim into its Fourth Claim for Relief – which is nothing more than a broad, non-specific assertion of a request for attorney fees "[p]ursuant to ORS 742.061." *See* Complaint, ¶¶ 61-62 and Prayer ¶ D.

**Bullivant|Houser|Bailey PC**
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 4**

- "Placed its own financial interests above the interests of [CAM];" and

- "Failed and refused to fully and timely pay the full value of [CAM's] Business Interruption loss."

*Id*. at ¶ 46 (a) – (f).

Each of these specifications concern Affiliated FM's performance of the subject matter of a contractual relationship, that is, the investigation, adjustment and measurement of a claimed loss under the terms and conditions of the insurance policy.  The Second Claim for Relief is an effort to state a claim in tort that has been expressly rejected by courts applying Oregon law.  "We hold that, under *Farris*,[3] an insurer's bad faith refusal to pay policy benefits to its insured sounds in contract and is not an actionable tort in Oregon." *Employer's Fire Ins. v. Love-It Ice Cream*, 64 Or. App. 784, 791, 670 P.2d 160 (1988).

CAM's theory for its second claim for relief was most recently tested and rejected in *Allstate Ins. Co. v. Breeden*, 2007 WL 4480759 (D. Or., Dec. 17, 2007).  In *Breeden*, a property insurer disputed the coverage for a fire loss.  The insured argued that Allstate's bad faith failure to pay the insurance claim caused the foreclosure of a mortgage on the insured's property.  The insured in *Breeden* rested his tort claim for bad faith on a theory that ORS 746.230(1)(f) was an actionable duty and that Allstate had acted in bad faith in its adjustment of a the insured's claim in violation of the Oregon Insurance Code and the standard of care applicable to all insurers doing business in Oregon.

Judge Ashmanskas rejected the insured's purported first-party tortious bad faith claim as "without merit."  "On its face, this claim is grounded solely in Allstate's failure to act in accordance with the terms of the Policy, which sounds in contract and is not actionable as a tort under Oregon law."  2007 WL 4480759 at **8, 9.

///

---

[3] *Farris v. U.S. Fid. and Guar. Co.*, 284 Or. 453, 587 P.2d 1015 (1978).

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 5**

CAM makes an attempt to explicitly link alleged violations of the Oregon Insurance Code to the purported tort claim appearing in CAM's Third Claim for Relief discussed below.[4]  However, CAM does not expressly tie the alleged bad faith claims handling to the Oregon Insurance Code in this Second Claim for Relief.  Instead, CAM's Second Claim for Relief rests upon the misplaced assertion that Affiliated FM "assumed a special duty of care toward [CAM]" by "issuing the [insurance policy]."

**A.    The first-party relationship between an insurer and an insured is not a "special relationship" creating heightened duties under Oregon law.**

Under Oregon law, where a party seeks to assert a tort claim that is also a breach of contract, that party is required to allege facts that would, if proven, provide a basis for a separate claim sounding in tort:

> "'first, that the defendant's conduct violated some standard of care that is not part of the defendant's explicit or implied contractual obligations; **and**, second, that the independent standard of care stems from a particular special relationship between the parties.'"

*Thompson v. Frederico*, 324 F. Supp. 2d 1152, 1167 (D. Or. 2004) (emphasis supplied; quoting *Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 333, 39 P.3d 903, *rev. denied*, 334 Or. 190 (2002)); *see also*, *Conway v. Pac. Univ.*, 324 Or. 231, 237-38, 924 P.2d 818 (1996).  "[U]nless plaintiff's relationship with [the] defendant qualifies as the type of 'special relationship'" that exists "independent of the contract" between the parties, no claim sounding in tort can be maintained for the defendant's alleged breach in the latter's performance of express or implied contractual duties.  *See Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 159-60, 26 P.3d 785 (2001).

---

[4] "[Affiliated] FM's failure to timely and fully pay [CAM's] claims under the [Affiliated] FM Policy is a violation of ORS 746.230(1)(f) * * *."  As discussed below, the Oregon Court of Appeals specifically rejected the allegation that CAM attempts to rely upon in its Third Claim for Relief:  "[T]he violation of ORS 746.230(1)(f) which requires insurers to settle claims promptly and in good faith where liability is reasonably clear does not give rise to a tort action."  *Employer's Fire Ins. v. Love-It Ice Cream*, *supra*, 64 Or. App. at 791.

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 6**

CAM does not allege a basis for the existence of a "special relationship" under the circumstances admitted in CAM's Complaint. CAM makes a misplaced attempt to suggest that this alleged "special relationship" is alleged by claiming it "relied upon [Affiliated FM] to provide [CAM] with Business Interruption insurance that would adequately protect [CAM] from financial loss and damages arising from an event such as the June 12, 2006 hail storm." Complaint, ¶ 47.

Simply alleging that one party relied upon another is not enough to state a tort claim deriving from performance of a contract. When inquiring about the existence of an alleged "special relationship," courts applying Oregon law have focused

> "not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead is on whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf."

*Bennett v. Farmers Ins. Group, supra*, 332 Or. at 161-62.

Oregon courts have narrowly defined this "special relationship" in the insurer-insured context. That "special relationship" is said to exist and apply to the duty to defend in the liability insurance context. The most notable example are *Georgetown Realty, Inc. v. The Home Ins. Co.*, 313 Or. 97, 831 P.2d 7 (1992) and its progeny. The standard of care, independent of the terms of the contract is said to derive from the dynamic of the relationship between the contracting parties where a liability insurer undertakes to defend and the insured places its potential monetary liability in the hand of the insurer and relinquishes control over the defense of the claim asserted against it.

However, this is a first-party dispute over amounts paid or to paid under business interruption endorsement to a property insurance policy. CAM does not allege that it had an

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 7**

agreement with Affiliated FM where the latter would step into CAM's shoes and manage CAM's affairs.

In *Bennett*, the Oregon Supreme Court affirmed the trial court's entry of judgment *n.o.v.* and dismissal of plaintiff's claim of tortious breach of implied covenant of good faith and fair dealing where the plaintiff's relationship was not one in which the defendant was to "step into the plaintiff's shoes and manage his business affairs." Where the parties were not in a special relationship, the defendant "did not owe plaintiff a duty in tort." *Bennett v. Farmers Ins. Group, supra*, 332 Or. at 162-63. In *Strader v. Grange Mut. Ins. Co.*, the Oregon Court of Appeals affirmed summary judgment dismissing the plaintiff's damage claims sounding in tort against a property insurer based upon a disagreement on the amount due under the policy that delayed permanent repairs of the insured's storm damaged home. The insureds "did not delegate to the [insurance company] the full authority to determine, on the [insureds'] behalf, how much money the [the insureds] would receive as compensation for storm damage. In calculating that amount, [the insurance company] was not, by virtue of its status or role, dedicated to furthering [the insureds'] interests. * * * [The insurance company] had no mandate to exercise independent judgment for the sole benefit of [the insureds]." *Strader v. Grange Mut. Ins. Co.*, *supra*, 179 Or. App. at 335.

Affiliated FM entered into an insurance contract with CAM to provide property and business interruption insurance (subject to certain terms, conditions, exclusions and limitations of liability). That did not create a special relationship under Oregon law. CAM does not allege that it was in a relationship where CAM relinquished control of CAM's business to Affiliated FM or that Affiliated FM had a mandate to exercise its independent judgment for the sole benefit of CAM.

///

///

///

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 8**

**B.     CAM's allegation that Affiliated FM failed to pay CAM's business interruption claim does not support a tort claim.**

Just as CAM's attempt to allege "bad faith" claims handling fails to state a claim for relief, CAM's allegations that Affiliated FM "[f]ailed and refused to fully and timely pay the full value of [CAM's] Business Interruption loss" (Complaint, ¶ 46(f)) does not state conduct actionable in tort.

This effort to transform a dispute over the amount of a payment under the insurance contract into a tort was recently rejected in *Allstate Ins. v. Breeden, supra*, where the insured alleged that he relied upon the insurance company to pay for damage to the insured property and prevent the foreclosure of the mortgage. Judge Ashmanskas ruled that in the absence of the insured identifying language in the insurance contract where Allstate undertook the obligation to paying the insured's mortgage, the insured "was responsible for continuing to pay his mortgage and the resulting foreclosure was the result of [plaintiff's] failing to pay his mortgage in a timely manner." *Allstate Ins. v. Breeden, supra,* 2007 WL 4480759 at *8. The court ruled as a matter of law that the insured failed to establish Allstate was subject to an increased standard of care independent of the policy when handling the claims of the insured and his mortgage holder. *Id.* at *9.

**C.     CAM claims compensatory damages in tort that are not provided for under Oregon law.**

As noted above, CAM admits Affiliated FM insured only one-half of the airplanes sitting on the tarmac when a hail storm occurred. CAM admits that Affiliated FM paid for the damage to the 33 Affiliated FM-insured aircraft. CAM admits that Affiliated FM paid an additional $300,000 twenty-two days after CAM requested an advance. Complaint, ¶ 25.

CAM alleges that the $26.4 million Cessna paid for the business at a bankruptcy sale "[o]n or about November 27, 2007" – 18 months after the hail storm – "was substantially below the value of [CAM's] business immediately before the occurrence of the hail storm on June 12, 2006." *Id.* at ¶ 32-33. The Complaint does not disclose what figure CAM now

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 9**

claims was its "true value" prior to the hail storm. CAM does not allege that the insurance policy insured CAM's alleged "true value." CAM does not allege Affiliated FM's conduct caused CAM to go bankrupt. Instead, CAM alleges that Affiliated FM's failure to pay the amounts of CAM's alleged business interruption claim "was a substantial factor in forcing [CAM] to seek bankruptcy protection." *Id.* at ¶ 31. Affiliated FM is not liable in tort for compensatory damages measured by the alleged diminished value of Plaintiff's business prior to the hail storm.

CAM's Second Claim for Relief should be dismissed as a matter of law.

## MOTION TWO

CAM styles its Third Claim for Relief as a tort claim for alleged "intentional interference with existing and prospective economic advantage." Affiliated FM asks this Court to enter an Order dismissing the Third Claim for Relief (paragraphs 50 to 60) as insufficient to state a claim for relief under applicable Oregon law. Fed. R. Civ. P. 12(b)(6).

**A.    CAM does not allege any basis to find a "special relationship" existed that would create duties independent of the insurance contract actionable in tort.**

CAM strains against Oregon law to assert, in a circular fashion, that "independent of the terms of the" insurance contract, Affiliated FM owed a duty to "fully and timely pay the full value" of CAM's business interruption claim under the insurance policy." Complaint, ¶ 46(f). CAM does not allege that Affiliated FM entered into any agreement or undertaking to act on its behalf—either in the sale of the insurance policy or in the adjustment of the subsequent claim for benefits.

CAM finds no support in Oregon law for its premise that by selling an insurance contract the insurance company is implied by law to undertake the duties of acting as a fiduciary to the prospective insured in the event of a future claim for first-party benefits. Well-established Oregon law permits an insurer to give equal consideration to its interests as

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 10**

well as those of other policyholders vis-à-vis those of a single insured—even in the third-party liability insurance context. *See Radcliffe v. Franklin Nat'l Ins.*, 208 Or. 1, 47, 298 P.2d 1002 (1956).

**B.    Failure to pay a first-party insurance claim is not a tort under Oregon law.**

CAM identifies Affiliated FM's allegedly tortious conduct as "failure to timely and fully pay [CAM's] claims under the [Affiliated] FM Policy." *See* Complaint, ¶¶ 53, 54 and 55. As noted above, an insurer's refusal to pay policy benefits to its insured sounds in contract and is not actionable in tort. *Employers' Fire Ins. v. Love It Ice Cream*, 64 Or. App. 784, 791, 670 P.2d 160 (1983).

**C.    CAM does not allege Affiliated FM employed improper means to cause existing and prospective third parties not to do business with CAM.**

CAM attempts to transform the allegation of failure to "timely and fully" pay a business interruption claim under the contract into "improper means" by claiming the conduct was "a violation of ORS 746.230(1)(f)."[5] This is misplaced for a number of reasons.

First, as noted above, courts applying Oregon law have squarely rejected attempts to transform alleged violations of this statute into a private claim for relief sounding in tort. CAM's attempt to bootstrap a private claim for relief with an alleged violation of the provisions of a regulatory statute is insufficient as a matter of law. [I]n *Farris v. United States Fidelity and Guaranty Company*, this court held that violation of provisions of the Insurance Code prohibiting certain conduct did not give rise to a tort action. The primary reason for so holding that other provisions of the code provided for civil penalties payable to

---

[5] The statute provides, in relevant part, as follows: "(1) No insurer * * * shall commit or perform any of the following unfair claim settlement practices: * * * * * (f) not attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear." ORS 746.230(1)(f).

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 11**

the state for code violations and that this was an indication that the legislature did not intend a private cause of action." *Bob Godfrey Pontiac, Inc. v. Roloff*, 291 Or. 318, 328, 630 P.2d 840 (1981).

In *Employers' Fire Ins. v. Love-It Ice Cream, supra*, the insured claimed its insurance company failed to pay all of the amounts due under property, extra expense and business interruption insurance coverages. The Oregon Court of Appeals expressly ruled that "the violation of ORS 746.230(1)(f) which requires insurers to settle claims promptly and in good faith where their liability is reasonable clear does not give rise to a tort claim." *Employers' Fire, supra*, 64 Or. App. at 790.

**D.    CAM does not allege Affiliated FM employed improper means to interfere with third parties' existing or prospective economic relations with CAM.**

The Oregon Court of Appeals did find  that the insured in *Employers' Fire Ins.* had sufficiently alleged a claim for tortious interference with business relationship through the use of improper means where the insured alleged that

> "[the insurer] filed litigation which it knew to be unfounded for the purpose of delaying payment and that it did so with the intention that, by its delaying payment, [the insured] would be unable to resume its business of marketing ice cream products, thereby reducing the amount that [the insurer] would be required to pay under its policy, *e.g.,* the cost of replacing equipment and leasehold improvements, business interruption and extra expenses of continuing business."

*Id.* at 792.

However, there are no allegations in CAM's Complaint of conduct remotely resembling those found in *Employers' Fire Insurance* or in other cases where tortious

///

///

///

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 12**

interference with economic relationships is claimed.[6]  There are no allegations of "unfounded litigation" or other allegations of "improper means" found in CAM's Third Claim for Relief.

Next, the gist of CAM's claim is that CAM could not purchase materials and pay off CAM's debts to others as the result of Affiliated FM's 'failure to pay' the full amount of CAM's business interruption insurance claim.[7]  This is insufficient to allege the element of "improper means" required under Oregon law.  The "interference resulting in injury to another [must be] wrongful by some measure beyond the fact of the interference itself." *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209, 582 P.2d 1365 (1978).  "Improper means are those which are independently wrongful, notwithstanding the injury caused by the interference." *Conklin v. Karban Rock Inc.*, 94 Or. App. 593, 601, 767 P.2d 444, *rev. denied* 307 Or. 719 (1989) (affirming dismissal of tortious interference with contractual relations claim where defendant induced the owner of land to sell the property to the defendant on behalf of an environmental protection group to protect the land from use as a commercial rock quarry).

CAM is also required to allege and prove Affiliated FM's knowledge and tortious intent.  The intent element of this tort requires an allegation and proof that the defendant acted with intent to interfere with the plaintiff's existing relationship or a continuing business relationship with a third party.[8]  CAM admits Affiliated FM "acknowledged and paid" CAM

---

[6] "Commonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Top Service Body Shop v. Allstate Ins. Co.*, *supra*, 283 Or. at 210, n. 11.

[7] CAM alleges that because Affiliated FM "fail[ed] to pay timely and fully" the amounts CAM alleges were due, CAM was unable to pay its creditors.  Complaint, ¶ 54.

[8] *Mooney v. Johnson Cattle Co.*, 291 Or. 709, 716, 634 P.2d 1333 (1981) ("[T]he defendant's knowledge and intent are required elements of the tort.")

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 13**

for the damage to Affiliated FM-insured property.  Complaint, ¶13.  CAM admits Affiliated FM paid $341,385 for business interruption.  *Id.* at ¶ 41.

CAM's generalized allegations about "existing and prospective contractual relationships" with "various parties," including, but not limited to "suppliers, customers, employees, and numerous investors and creditors" (Complaint, ¶¶ 51, 53) are indefinite and uncertain.[9]  "Without establishing [the defendant's] knowledge of a contractual relationship, intentional interference with that contractual relationship cannot be proved."[10]  Affiliated FM should not be required to bear the expense of attempting to investigate and guess at what transactions CAM intends to include as the basis for bringing this claim.

"[A] plaintiff [must] show both that a defendant intentionally interfered with the plaintiff's economic relationship *and that the defendant had no privilege to do so*."[11]  CAM has the burden of alleging and negating Affiliated FM's qualified privilege as part of CAM's affirmative case.[12]  CAM fails to allege these necessary elements of this claim under Oregon law.

///

///

///

---

[9] *See Rotec Industries v. Mitsubishi Corp.*, 181 F. Supp. 2d 1173, 1178 (D. Or. 2002), *aff'd* 348 F.3d 1116 (9th Cir. 2003) *cert. denied* 541 U.S. 1063 (2004) (granting summary judgment dismissing intentional interference with prospective advantage claim as a matter of law where there was no evidence defendant's conduct caused the third party to change its subsequent purchasing decisions).

[10] *Willamette Quarries v. Wodtli*, 308 Or. 406, 413, 781 P.2d 1196 (1989).

[11] *Northwest Natural Gas Co. v. Chase Gardens,* 328 Or. 487, 498-99, 982 P.2d 1117 (1999). Emphasis supplied.

[12] *See Straube v. Larson*, 287 Or. 357, 371, 600 P.2d 371 (1979).

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page 14**

Under Oregon law, Affiliated FM had a qualified privilege to act in furtherance of its legitimate business interests.[13]  Affiliated FM had a contractual right to conduct a reasonable investigation as part of its claims process.[14]  "Generally, a defendant's subjective judgment as to its own business purposes will control."[15]  This type of investigation not only serves a legitimate business interest of the insurance company, but it also serves policyholders and a public interest in keeping insurance available at reasonable rates by detecting, preventing and deterring inflated claims and fraud.[16]

## E.    The alleged difference in the value of CAM's business is not the measure of damages under a claim alleging tortious interference with economic relationships.

Here, CAM asserts that after paying $750,000 for the damage to the 33 airplanes Affiliated FM insured and $341,385 for business interruption, Affiliated FM intentionally interfered with CAM's "existing and prospective contractual and economic relationships" with "various parties."  Complaint, ¶¶ 51, 53.  CAM's Complaint alleges that it was "unable to purchase materials from its suppliers, pay off existing debts to those and other suppliers, produce or sell aircraft to [CAM's] purchasers, compensate [CAM's] employees, and pay existing debts to credits and others to whom [CAM] owed money."  *Id.* at ¶ 54.

---

[13] *See Top Service Body Shop v. Allstate Ins. Co.*, *supra*, 283 Or at 212 (affirming trial court's entry of judgment notwithstanding the verdict ruling against a body shop complaining about disparaging remarks about its business to customers and prospective customers where the defendant insurance company established its conduct was pursuant to "pursuit of its own business purposes as it saw them.")

[14] *See Uptown Heights Associates v. Seafirst Corp*., 320 Or. 638, 651-52, 891 P.2d 639 (1995) (invoking an express contractual right is, as a matter of law, a legitimate purpose and will not subject the party invoking its rights to liability for tortious interference).

[15] *Northwest Natural Gas Co. v. Chase Gardens*, *supra*, 328 Or. at 498.

[16] "If [a defendant] is promoting an interest which is equal or superior in social value to that with which he interferes, [a defendant's] actions are said to be privileged or justified." *Wampler v. Palmerton*, 250 Or. 65, 74, 439 P.2d 601 (1968).

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 15**

CAM lifts paragraph 48 from the Second Claim for Relief and repeats the text (verbatim) – that is, alleging that as a "direct and proximate result of [Affiliated] FM's bad faith" CAM's business was sold for "less than the true value" immediately prior to the hail storm (*id.* at ¶ 59) and the sale price of CAM's business to Cessna in November 2007.

Yet the gravamen of this type of claim for relief focuses on alleged intentional interference with CAM's existing or prospective economic relations with third parties.  It requires allegations and proof of wrongful conduct or statements directed at third parties. The "salient inquiry in any interference claim is whether * * * "[d]efendant's interference * * * caus[ed] a third person to discontinue the relationship with plaintiff."[17]  CAM's Complaint does not allege the required conduct or statements.

The alleged difference in the value of CAM's business at two points in time does not represent the measure of damage at issue in a proper claim for intentional interference with existing and prospective economic relationships.  The purpose of the tort is to "protect the integrity of voluntary economic relationships * * * that would have very likely resulted in a pecuniary benefit to the plaintiff but for the defendant's interference."[18]  CAM's Third Claim for Relief ignores the required nexus between the allegedly tortious conduct affecting the relationships with these unidentified third parties and a measure of damages recognized under Oregon law in a claim for tortious interference with economic relations.

As a matter of law, the Third Claim for Relief fails to set forth facts sufficient to state a claim for relief for intentional interference with existing and prospective economic relations under Oregon law.  CAM's Third Claim for Relief should be dismissed.  Fed. R. Civ. P. 12b(6).

---

[17] *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 622, 733 P.2d 430 (1987).

[18] *See Fox v. Country Mutual Ins. Co.*, 169 Or. App. 54, 75, 7 P.3d 677 (2000), *rev. denied* 332 Or. 137 (2001).

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 16**

## MOTION THREE

Affiliated FM moves to dismiss CAM's Fourth Claim for Relief (paragraphs 61 and 62) from CAM's Complaint.  Fed. R. Civ. P. 12(b)(6).

CAM's pleading is an effort to improperly assert a generalized claim for attorney fees by rolling two claims for relief purportedly sounding in tort together with a breach of contract claim.  CAM has framed its pleading to assert a claim for attorneys fees "pursuant to ORS 742.061" under

- its breach of contract claim for relief (Complaint, ¶¶ 37-42); **and**

- its claim for tort damages alleging a breach of implied covenant of good faith and fair dealing (*id.* at ¶¶ 43-49); **and**

- its tort claim for intentional interference with existing and prospective economic damages (*id.* at ¶¶ 50-60).

The Fourth Claim for Relief is not a separate claim for relief.

What is designated in the Complaint as the Fourth Claim for Relief is nothing more than two sentences.  The first sentence purports to incorporate by reference all of the preceding sixty paragraphs of the Complaint.  *Id.* at ¶ 61.  The second sentence asserts that "[p]ursuant to ORS 742.061, [Affiliated] FM is liable for [Plaintiff's] reasonable attorney fees and costs."  *Id.* at ¶ 62.

The portion of the prayer corresponding to what is styled as a separate claim for relief does not ask for any damages.  In circular fashion, it simply asks for "reasonable attorney fees and costs incurred by [CAM] in this case, pursuant to ORS 742.061."  *Id.* at Prayer, ¶ D.

The statute provides for a basis for a court applying Oregon law to tax a reasonable amount of attorney fees "as part of the costs of the action and any appeal thereon" where

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 17**

> "settlement is not made within six months of the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action * * *."

ORS 742.061(1).

CAM asks for attorney fees **and** costs "pursuant to ORS 742.061" Complaint, Prayer, ¶ D. ORS 742.061 provides no basis to award costs other than attorney fees. It is also well established under Oregon law that the statute applies only to claims "upon any policy of insurance" not to alleged tort claims in the manner that CAM attempts to employ the statute here.

CAM's Fourth Claim for Relief should be dismissed, as it does not allege a claim for relief cognizable under Oregon law. Fed. R. Civ. P. 12(b)(6).

## MOTION FOUR

Affiliated FM moves to strike the request for attorney fees sought as part of CAM's Second Claim for Relief at paragraph D of the prayer of CAM's Complaint. Fed. R. Civ. P. 12(f). CAM's Second Claim for Relief is styled as a claim sounding in tort. CAM does not allege it ever presented a claim under the insurance contract or even identified the damages sought under this tort theory prior to serving Affiliated FM with a summons and the Complaint.

Courts applying Oregon law may award only the fees reasonably incurred for a claim for which attorney fees are authorized. The statute "provides for awards of attorney to insureds who prevail in actions on policies." *Vancouver Furniture Co. v. Industrial Indem. Co. of the Northwest*, 74 Or. App. 642, 648, 704 P.2d 518 (1985), *rev. denied,* 300 Or. 477 (1986) (applying ORS 743.114, the predecessor statute to ORS 742.061). ORS 742.061 was enacted to encourage resolution of contractual claims without litigation and to reimburse successful claimants for monies expended in suits filed to enforce an insurance contract. *See*

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 18**

*Chalmers v. Oregon Auto. Ins. Co.*, 263 Or. 449, 452, 502 P.2d 1378 (1972) (*dictum*; interpreting ORS 743.114; replaced by ORS 742.061).

ORS 742.061 does not create a statutory right to attorney fees to a party that prevails under tort claims for relief. *See Goddard v. Farmers Ins. Co. of Oregon*, 177 Or. App. 621, 623, 33 P.3d 1075, *rev. denied*, 332 Or. 631 (2001).

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state <u>upon an insurance contract</u> of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such an action, a reasonable amount of attorneys fees shall be taxed as part of the costs of the action and any appeal thereon."

ORS 742.061. Emphasis supplied.

In *Goddard v. Farmers Ins. Co. of Oregon*, *supra*, the Oregon Court of Appeals reversed a summary judgment and reinstated plaintiff-insured's tort claims against a liability insurer where the plaintiff alleged the insurer tortiously failed to settle and pay a wrongful death claim.  Plaintiff petitioned for an award of attorney fees under ORS 742.061, and argued that the damages sought under its claims for relief for negligence and bad faith against an insurer "*arose* from the insurer's failure to settle a claim under an insurance policy."  177 Or. App. at 624.  Emphasis in original.  The Oregon Court of Appeals denied the insured's petition for attorney fees as the tort claims were "not an action on an insurance policy[, t]herefore, plaintiff is not entitled to an award of attorney fees under ORS 742.061." *Id.* at 621.

In the event that this Court finds CAM's Second Claim for Relief does assert a common law tort claim independent of the contract, that claim is not an action upon or

///

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 19**

enforcing the contract. This Court should strike CAM's claim for attorney fees from its Second Claim for Relief. Fed. R. Civ. P. 12(f).

## MOTION FIVE

Affiliated FM moves to strike the request for attorney fees for CAM's Third Claim for Relief from paragraph D of the prayer of CAM's Complaint. Fed. R. Civ. P. 12(f).

CAM's Third Claim for Relief also purports to alleged a tort claim. For reasons set forth in the preceding section, this Court should strike the attorney fees from CAM's Third Claim for Relief.

## MOTION SIX

Affiliated FM moves to strike CAM's claim for prejudgment interest from its First Claim for Relief at paragraph 42 of CAM's Complaint. Fed. R. Civ. P. 12(f).

CAM alleges that it "has been damaged in an amount to be proven at trial, but not less than $9,017,921, plus prejudgment interest accruing at 9% annually running from January 31, 2007. Complaint, ¶ 42, Prayer, ¶ A. Also CAM has a free floating request for an award of prejudgment interest "compounded annually at 9%, pursuant to ORS 82.010, and running from January 31, 2007, pursuant to OAR 836.080.0230" alleged in the generalized fashion as the generalized attorney fee requests. *See* Complaint, Prayer, ¶ F.

"As a general rule, prejudgment interest cannot be recovered in actions at law unless there is an agreement to pay interest or a statute imposing interest." *Newell v. Weston*, 150 Or. App. 562, 582, 946 P.2d 961 (1997), *rev. denied,* 327 Or. 317 (1998). CAM does not allege there is an agreement to pay interest. There is none. CAM's damage claim is not fixed or liquidated. CAM alleges that the amount of its business interruption claim is "an amount to be proven at trial." Complaint, ¶ 42. *See Interstate Production Credit v. Fireman's Fund*, 788 F. Supp. 1530, 1543 (D. Or. 1992) (dismissing claim for prejudgment

///

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 20**

interest as a matter of law where "neither the issue of liability nor the issue of damages was without substantial, reasonable controversy").

Affiliated FM acknowledges that even though damages may be unliquidated, under circumstances not presented here, damages may be ascertained or easily ascertainable.  *See Public Market Co. v. Portland*, 171 Or. 522, 130 P.2d 624, 138 P.2d 916 (1943).  On the face of CAM's Complaint it is apparent that this is not a dispute where damages were ascertained or readily ascertainable by reference to an objective standard.  This is a dispute regarding the measure of the "disruption" of CAM's operations and earnings to perform cosmetic repairs to completed aircraft (half of which Affiliated FM did not insure) that CAM had continued to build prior to the hailstorm, but could not deliver ("due to unanticipated delays in * * * FAA certification") where CAM alleges Affiliated FM did not give "due consideration to [CAM's] business plans and past performance."  Complaint, ¶¶ 8, 10, 46(c).

Where the amount of plaintiff's damages is to be determined by weighing the credibility of lay and expert opinion testimony, prejudgment interest is inappropriate under Oregon law.  *See Emmis Television Broadcasting v. Travelcenters of America, Inc.*, 2007 WL 2816211 (D. Or., Sept. 27, 2007).

This is not a situation where the amount of CAM's claim has been fixed, either.  It is apparent from the face of the Complaint that CAM's insurance claim has been a moving target.

First, CAM alleges that CAM's accountants submitted "calculations and [a] Summary of Loss" of $8,345,022.  Complaint, ¶ 20.  CAM admits that it did not submit a signed Sworn Statement in Proof of Loss on December 18, 2006.  *Id.* at ¶ 20 ("[CAM] subsequently submitted a 'Sworn Statement in Proof of Loss'").

CAM's claim for prejudgment interest rests on the speculation of earnings based on projected sales that did not materialize.  CAM admits that the planes were sitting on the tarmac was that CAM could not deliver the completed planes – that is, CAM's projections of

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 21**

earnings were disrupted by "unanticipated" delays with the FAA.  CAM alleges it had

"begun to meet" its production goals, but it admits it was manufacturing planes that it could

not deliver because of "unanticipated delays" by the FAA.  *Id.* at ¶¶ 7, 8.

CAM asserts this open-ended, indefinite amount of claimed damages owed under the

insurance contract in "an amount to be proven at trial" of "not less than $9,017,921."  The

amounts CAM alleges were due under the terms of the insurance contract are not liquidated

or ascertained.  Where the claims of lost net earnings are not ascertained, nor readily

ascertainable by reference to a generally recognized, objective standards, prejudgment

interest is not recoverable.  *SDS Lumber Co. v. Allendale Mut. Ins. Co.*, 563 F. Supp. 608,

613 (D. Or. 1983).

The manner in which CAM arrived at its prejudgment interest requires scrutiny as

well.  CAM uses a "revised" claim (Complaint, ¶ 28) and attempts to treat that figure as

though it was disclosed and payable months earlier.  CAM ignores the uncertainty of the "not

less than" language, and simply subtracts $341,385 (Affiliated FM's measure and payment of

the loss) from $9,359,306 – where CAM admits the $9, 359,306 figure was first disclosed to

Affiliated FM in August 28, 2007.

In other words, CAM asks for prejudgment interest by changing the amount and

backdating the claim, then asking that interest be assessed as though an amount not disclosed

until August 28, 2007 was ascertained or readily ascertainable on January 31, 2007 – 45 days

after CAM's accountants produced "calculations" of more than a million dollars less than the

figure CAM now asserts as its business interruption loss.

On the face of the Complaint, CAM admits that the amount it claims has been

changed since the date that CAM asserts as the date prejudgment interest allegedly accrued

under OAR 836-080-0230.  CAM's attempt to rely upon an administrative regulation,

OAR 836-080-0230, to fix the date the interest allegedly first accrued is also misplaced.

///

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page 22**

That regulation states that "[a]n insurer shall complete its claim investigation not later than the 45th day after its receipt of notification of claim, unless the investigation cannot reasonably be completed within that time." That regulation does not provide a basis to assess prejudgment interest, nor does it fix a date for assessment of prejudgment interest. There are a number of reasons why the investigation of an insured's claimed loss might take more than 45 days—such as an insured's failure or refusal to identify the amount of its claimed loss, the need to collect and review documents in the sole possession and control of an insured which may be less than cooperative or responsive.

The purpose of the regulation is to encourage prompt and diligent investigation. The regulation does not fix a 45-day limit on the insurer's investigation. On its face, the regulation acknowledges that where an insured does provide documents or information, that may raise additional questions and require follow up requests for information and investigation to make a coverage determination or measure the amount of a covered loss. This is an administrative regulation, not a basis for a private claim for a remedy in damages.

CAM's request for prejudgment interest should be stricken from paragraph 42 of the First Claim for Relief. Fed. R. Civ. P. 12(f).

## MOTION SEVEN

Affiliated FM moves to strike the prejudgment interest claim in paragraph 48 from CAM's Second Claim for Relief. Fed. R. Civ. P. 12(f).

CAM's Second Claim for Relief, is alleged "in the alternative to the damages sought in CAM's claim for breath of contract." Complaint, Prayer, ¶ B. CAM styles this as a tort claim for "bad faith breach of the implied covenant of good faith and fair dealing," and asks for prejudgment interest based upon an indefinite, open-ended allegation that the amount "includ[es] but it [is] not limited to the amount by which the sale price for [CAM] out of bankruptcy was less than the true value of [CAM's] business immediately prior to the hail storm on June 12, 2006." *Id.* at ¶ 48.

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page 23**

Though a claim for prejudgment interest is not found in the portion of the prayer related to the Second Claim for Relief, the body of the pleading has an allegation that Affiliated FM's tortious conduct caused "damages to [CAM] in an amount to be proven at trial, plus prejudgment interest at 9% annually running from January 31, 2007." *Id.* There is also a floating, generalized assertion in the prayer asking for "[p]rejudgment interest compounded annually at 9%, pursuant to ORS 82.010, and running from January 31, 2007, pursuant to OAR 836.080.0230." *Id.* at Prayer, ¶ F.

"The general rule is that prejudgment interest is not awarded in tort actions because damages are not ascertainable until the judgment is entered." *Carpenter v. Land O'Lakes, Inc.*, 985 F. Supp. 1249, 1250 (D. Or. 1997); *Erickson Air-Crane Co. v. United Techs. Corp.*, 87 Or. App. 577, 582, 743 P.2d 747, *rev. denied,* 304 Or. 680 (1987). CAM's Complaint does not identify the amount of such damages.

CAM attempts to tie its request for prejudgment interest to ORS 82.010. CAM does not identify which provision of the statute it relies upon; however, for purposes of this Motion, Affiliated FM will assume it is ORS 82.010(1)(a):

> "The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on: (a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof."

"[U]nder ORS 82.010, interest on damages for breach of contract begins to run when '(1) the exact amount of damages is either ascertained or readily ascertainable; and (2) the time from which the interest runs is easily ascertained.'" *Cascade Corp. v. American Home Assur. Corp.*, 206 Or. App. 1, 15, 135 P.3d 450 (2006), *appeal dismissed,* 342 Or. 645 (2007). The question becomes whether the amount of the "diminished business value"

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 24**

claimed as damages under this Second Claim for Relief was ascertainable on the date, January 31, 2007, CAM has selected.  *See L.H. Morris Electric, Inc. v. Hyundai Semiconductor America, Inc.*, 203 Or App. 54, 78, 125 P.3d 1 (2005), *rev. denied*, 341 Or. 140 (2006).

CAM does not allege the amount is ascertainable, nor readily ascertainable – even up to the date the Complaint was filed.  CAM alleges Affiliated FM is liable in tort for "damages in an amount to be determined at trial."  Complaint, Prayer, ¶ B.  The alleged difference between the yet unspecified "true value" of CAM's business remains undetermined.  Cessna's bid for CAM's business was not determined on January 31, 2007.  That amount was established at the sale on November 27, 2007 – 11 months after the date CAM alleges as the accrual date for prejudgment interest.

CAM does not allege that it ever asserted a claim for such damages as part of the insurance claim or even that it made a demand upon Affiliated FM prior to serving the Complaint.  The pleading asserts damages that are neither a liquidated amount nor are those tort damages readily ascertainable amount.

CAM made a loss of earnings under the insurance contract, and now attempts to augment that claim by alleging that Affiliated FM is liable in tort for the CAM's 'diminished business value' after CAM filed for bankruptcy.  Judge Frye denied plaintiffs' petition for an award of prejudgment interest on the amount of plaintiffs' economic losses in *Carpenter v. Land O'Lakes, supra*.  That case presented a situation where the plaintiffs' alleged and proved that the defendant's tortious conduct (*i.e.*, supplying moldy feed) caused the plaintiffs' dairy herds to produce less milk.  "Economic damages in this case were not readily ascertainable until finally determined by the court."  985 F. Supp. at 1251.  CAM's claim for

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page 25**

prejudgment interest should be stricken where the amount of damages is neither liquidated nor readily ascertainable by reference to some objective standard.

**MOTION EIGHT**

Affiliated FM moves to strike CAM's claim for prejudgment Interest from paragraph 59 of the Third Claim for Relief. Fed. R. Civ. P. 12(f).

Again, CAM's Third Claim for Relief, is alleged "in the alternative to the damages sought in CAM's claim for breach of contract." Complaint, Prayer, ¶ C. CAM styles this as a tort claim for "Intentional Interference with Existing and Prospective Economic Advantage."

Again, CAM alleges Affiliated FM is liable in tort for "damages in an amount to be determined at trial." *Id.* CAM does not identify the amount of such damages, except to allege that the amount "include[es] but it [is] not limited to the amount by which the sale price for [CAM] out of bankruptcy was less than the true value of [CAM's] business immediately prior to the hail storm on June 12, 2006." *Id.* at ¶ 59.

As is the case with the preceding tort claim, a claim for prejudgment interest is not found in the portion of the prayer related to the Third Claim for Relief. The body of the pleading has an allegation that Affiliated FM's tortious conduct caused "damages to [CAM] in an amount to be proven at trial, plus prejudgment interest at 9% annually running from January 31, 2007." *Id.* There is a repetition of the floating, generalized assertion in the prayer asking for "[p]rejudgment interest compounded annually at 9%, pursuant to ORS 82.010, and running from January 31, 2007, pursuant to OAR 836.080.0230." *Id.* at Prayer, ¶ F.

Where damages are allegedly caused by the tortious act of a defendant, such damages would be unliquidated prior to judgment because the damages are usually unascertainable. "The rule laid down in *Public Market Co. v. Portland* * * * was never intended to apply to

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 26

tort actions for unliquidated damages." *See Calcagno v. Holcomb*, 181 Or. 603, 613, 185 P.2d 251 (1947). The Complaint alleges that the amount is "to be proven at trial." Complaint, ¶ 59. It is apparent from the face of the Complaint that the amount alleged here is neither liquidated nor readily ascertainable by reference to an objective standard. CAM's request for prejudgment interest should be stricken from the Third Claim for Relief.

## MOTION NINE

As noted above, CAM's Fourth Claim for Relief is not a claim for relief at all. Due to the unusual way CAM's Complaint is assembled, Affiliated FM moves to strike prejudgment interest from CAM's Fourth Claim for Relief insofar as CAM intends to assert that request in paragraph F in the prayer to CAM's Complaint. Fed. R. Civ. P. 12(f).

## MOTION TEN

Affiliated FM moves to strike CAM's punitive damages allegations from paragraphs 49 and 60 of the Complaint and paragraph E of the Prayer. Fed. R. Civ. P. 12(f).

CAM alleges that Affiliated FM acted "unreasonably" by

- "delay[ing] resolution of [CAM's] * * * claim;"
- "repeatedly and unnecessarily demanding that [CAM] provide additional information;"
- "failing to give due consideration to [CAM's] business plans and past performance in assessing [CAM's] * * * claim;"
- "fail[ing] to give due consideration to [CAM's] rebuttal of [Affiliated] FM's * * * coverage position;"
- "plac[ing] [Affiliated FM's own financial interests above the interests of [CAM];" and
- "fail[ing] and refus[ing] to fully and timely pay the full value of [CAM's] * * * loss."

Complaint, ¶¶ 46, 50.

Bullivant|Houser|Bailey PC

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO
DISMISS AND/OR STRIKE
Page 27**

As discussed above, the type of dispute here will not support CAM's efforts to state a tort claim under Oregon law.  Allegations that establish "nothing more than a typical disagreement between an insurer and an insured over the existence of compensable events and the amount of compensation" do not approach "bad faith, egregiousness or the limits of social toleration."  *Rossi v. State Farm Mr. Auto. Ins. Co.*, 90 Or. App. 589, 591-92, 752, P.2d 1298, *rev. denied*, 306 Or. 414 (1988).

Even if these allegations are assumed to be true, this is not conduct that would support an award of punitive damages under either CAM's Second or Third Claims for Relief.  "The Oregon courts have consistently held that disagreements over the compensability of a claim do not amount to outrageous conduct.  *Allstate Ins. v Breeden, supra,* 2007 WL 4480759 at *10.  In addition to claiming bad faith, the insured in *Allstate Ins. v. Breeden, supra,* sought punitive damages under a tort claim alleging outrageous conduct.  The court found the allegedly offensive conduct was nothing more than engaging in common investigation procedures and did not support the tort claim for relief as a matter of law.  2007 WL 4480759 at *11.

"Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law."  *Harris v. Pameco Corp.*, 170 Or. App. 164, 171, 12 P.3d 524 (2000).  The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  *Christofferson v. Church of Scientology*, 57 Or. App. 203, 211, 644 P.2d 577 (1982), *rev. denied*, 293 Or. 456 (1982), *cert. denied*, 459 U.S. 1206 (1983).

"A difference of opinion as to the meaning and application of the terms of a contract could rarely, if ever, amount to outrageous conduct."  *State Farm Mut. Auto. Ins. Co. v. Berg*, 70 Or. App. 410, 418, 689 P.2d 989 (1984), *rev. denied*, 298 Or. 553 (1985) (raising a policy exclusion to deny liability for the insured's claim was neither bad faith nor egregious conduct, even where the appellate court interpreted the terms differently from the insurer).

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE
Page 28**

Affiliated FM asks this Court to strike the punitive damages allegations in paragraphs 49 and 60 from CAM's Complaint.  Fed. R. Civ. P. 12(f).

DATED this 22nd day of January, 2008.

BULLIVANT HOUSER BAILEY PC


By    /s/ Stuart D. Jones
           Stuart D. Jones, OSB #842568
           E-mail: stuart.jones@bullivant.com
           Telephone: 503.228.6351

           Attorneys for Defendant Affiliated Fm Insurance Company

**Bullivant|Houser|Bailey PC**

888 S.W. Fifth Avenue, Suite 300
Portland, Oregon  97204-2089
Telephone: 503.228.6351

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**
**Page 29**