**James T. McDermott,** OSB No. 933594
jmcdermott@balljanik.com
**Richard J. Stone,** OSB No. 940021
rstone@balljanik.com
**Kevin S. Mapes,** OSB No. 020079
kmapes@bjllp.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, Oregon  97204-3219
503-228-2525
503-226-3910 (fax)

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **COLUMBIA AIRCRAFT MANUFACTURING CORPORATION**, **Debtor-in-Possession,**<br><br>Plaintiff,<br><br>v.<br><br>**AFFILIATED FM INSURANCE COMPANY**,<br><br>Defendant. | Case No. 07-6357-TC<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**<br><br>**REQUEST FOR ORAL ARGUMENT** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     SUMMARY OF RELEVANT FACTS ...................................................... 4

III.    RESPONSE TO DEFENDANT'S MOTIONS ........................................... 9

        (A)     The Legal Standard for Addressing Rule 12 Motions ........................... 9

        (B)     Response to Motion One:  Columbia's Bad Faith Cause of Action States a
                Claim Upon Which Relief Can be Granted. ........................................ 10

                1.      Oregon law imposes tort duties on parties to a "special
                        relationship." ...................................................................... 10

                2.      Columbia's complaint alleges facts which, if proven, would
                        impose tort duties on defendant FM. ...................................... 16

        (C)     Response to Motion Two:  Columbia's Intentional Interference Cause of
                Action States a Claim Upon Which Relief Can be Granted. ................. 22

                1.      Oregon law specifically recognizes a claim for intentional
                        interference in situations such as those presented here............. 22

                2.      Defendant's challenge to the damages sought in Columbia's claim
                        for intentional interference is not the proper subject of a motion to
                        dismiss.............................................................................. 25

                3.      Columbia has alleged a proper measure of damages. .............. 25

        (D)     Response to Motion Three:  Columbia's Claim for Attorney Fees is
                Appropriate. ....................................................................... 26

        (E)     Response to Motions Four and Five:  Defendant's Motions to Strike
                Regarding Attorney Fees Should be Denied................................ 27

        (F)     Response to Motions Six through Eight: Columbia's Claims for
                Prejudgment Interest are Appropriately Stated................................ 28

        (G)     Response to Motion Nine:  Defendant's Motion to Strike is Inappropriate
                and Unnecessary. ................................................................ 30

        (H)     Response to Motion Ten:  Columbia Has Properly Stated a Claim for
                Punitive Damages. ............................................................. 31

IV.     CONCLUSION...................................................................... 33

**Page** i - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
AND/OR STRIKE**

# TABLE OF AUTHORITIES

## CASES

*Allstate Ins. Co. v. Breeden*, 2007 WL 4480759 (D.Or. Dec. 17, 2007) .........................................19

*Allstate Ins. Co. v. Liberty*, 2007 WL 4165745 (D.Or. 2007) .......................................................10

*Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978) .................................16

*Aylett v. Universal Frozen Foods Co.*, 124 Or. App. 146, 861 P.2d 375 (1993).........................23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955 (2007)........................................10

*Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 26 P.3d 785 (2001).......................13, 14, 18

*Butterfield v. State*, 163 Or. App. 227, 987 P.2d 569 (1999), *rev denied*, 330 Or.
    252 (2001).....................................................................................................................17

*Carlson v. Blumenstein*, 54 Or.App. 380, 635 P.2d 380 (1981) ...................................................29

*Carpenter v. Land O' Lakes, Inc.*, 880 F.Supp. 758 (D.Or. 1995)...............................................31

*Contractors, Inc. v. Tri-County*, 94 Or.App. 392, 766 P.2d 389 (1989).......................................29

*Conway v. Pacific Univ.*, 324 Or. 231, 924 P.2d 818 (1996) ...................................................12, 13

*Dockins v. State Farm Insurance Company*, 329 Or. 20, 985 P.2d 796 (2000) ...........................30

*Employers' Fire Ins. Co. v. Love It Ice Cream*, 64 Or. App. 784, 670 P.2d 160
    (1983)................................................................................................................18, 24, 28

*Farris v. U.S. Fid. & Guar. Co.*, 284 Or. 453, 587 P.2d 1015 (1978)....................................16, 17

*Fessler v. Quinn*, 143 Or. App. 397, 923 P.2d 1294, (1996) ........................................................17

*Gardner v. Meiling*, 280 Or. 665, 572 P.2d 1012 (1977) ............................................................29

*Georgetown Realty, Inc. v. The Home Ins. Co.*, 102 Or. App. 611, 796 P.2d 651
    (1990)...........................................................................................................................18

*Georgetown Realty, Inc. v. The Home Ins. Co.*, 313 Or. 97, 831 P.2d 7 (1992) .........10, 11, 16, 17

*Halliburton, II v. County of Linn*, 2007 WL 4565238 (D.Or. 2007) .................................9, 10, 21

*James River Ins. Co. v. Breitenbush Hot Springs & Conference Center*, 2006 WL
    3628054 (D.Or. 2006)...................................................................................22, 25, 31

**Page ii -** **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
AND/OR STRIKE**

*Jones v. Emerald Pacific Homes, Inc.*, 188 Or. App. 471, 71 P.3d 574 (2003) ......................14, 15

*Karam v. City of Burbank*, 352 F.3d 1188 (9th Cir. 2003) ..........................................................4

*Laursen v. Morris*, 103 Or.App. 538, 799 P.2d 648 (1990)..........................................................29

*Leininger v. Pitts*, 2008 WL 200022 (D.Or.)..........................................................................10, 21

*Lewis-Williamson v. Grange Mut. Ins. Co.*, 179 Or.App. 491, 39 P.3d 947 (2002).....................15

*Lithia Lumber Co. v. Lamb*, 250 Or. 444, 443 P.2d 647 (1968)..................................................29

*Maine Bonding & Cas. Co. v. Centennial Ins. Co.*, 298 Or. 514, 693 P.2d 1296
        (1985)..............................................................................................................................11

*Mayfield v. U.S.*, 504 F.Supp.2d 1023 (D.Or. 2007), *citing Rosen v Walters*, 719
        F.2d 1422 (9th Cir. 1983) ...............................................................................................10

*McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995)..................................................22, 23

*Mooney v. Johnson Cattle Co., Inc.*, 291 Or. 709, 634 P.2d 1333 (1981)....................................25

*Nat'l Org. for Women v. Scheidler*, 510 U.S. 249 (1994) .......................................................10, 21

*Northwest Natural Gas Co. v. Chase Gardens*, 328 Or. 487, 982 P.2d 1117 (1999)...................24

*Onita Pacific Corp. v. Trustees of Bronson*, 315 Or. 149, 843 P.2d 890 (1992)....................11, 12

*Oregon Life & Health Ins. Guar. Ass'n v. Inter-Regional Fin. Group, Inc.*, 156
        Or.App. 485, 967 P.2d 880 (1998).................................................................................15

*Perez v. Nike, Inc.*, 2008 WL 282271 (D.Or. 2008) ....................................................4, 10, 22, 31

*Shepherd v. Hub Lumber*, 273 Or. 331, 541 P.2d 439 (1975) ....................................................29

*Strader v. Grange Mut. Ins. Co.*, 179 Or. App. 329, 39 P.3d 903, *rev denied*, 334
        Or. 190 (2002)..................................................................................................................18

*Straube v. Larson*, 287 Or. 357, 600 P.2d 371 (1979)................................................................24

*Sunset Fuel & Engineering Co. v. Compton*, 97 Or.App. 244, 775 P.2d 901 ..............................27

*Sutton v. Fire Insurance Exch.*, 265 Or. 322, 509 P.2d 418 (1973)............................................30

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ..................................................................10

*Thompson v. Allied Mut. Ins. Co.*, 2000 WL 264318 (D.Or. 2000)............................................15

**Page iii** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
        AND/OR STRIKE**

*Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978)...................................................................................................................23

*Willamette Quarries v. Wodtli*, 308 Or. 406, 781 P.2d 1196 (1989) ......................................24, 27

*Williams v. Stockman's Life Ins.*, 250 Or. 160 (1968)...................................................................28

## STATUTES AND RULES

Fed.R.Civ.P. 8(a) ...........................................................................................................................10, 21

Fed.R.Civ.P. 12(b)(6) ...........................................................................................................9, 21, 29, 31

O.R.S. 30.925 ..........................................................................................................................................32

O.R.S. 30.295(1) ....................................................................................................................................32

O.R.S. 742.061.........................................................................................................................26, 27, 30

O.R.S. 746.230(1) ..........................................................................................................................9, 19, 32

## MISCELLANEOUS

C. Wright & A. Miller, <u>Federal Practice and Procedure</u> Section 1216, pp. 235-236 (3rd Ed. 2004) .......................................................................................................................10

Restatement (Second) Torts, Section 774A(1) .............................................................................26

::ODMA\PCDOCS\PORTLAND\600409\1

Plaintiff Columbia Aircraft Manufacturing Corporation, Debtor-in-Possession ("Columbia"), files this response to the motions to dismiss and/or strike filed by defendant Affiliated FM Insurance Company ("FM"). Columbia's complaint contains sufficient facts to state each of its claims, and FM's motions should be denied in their entirety.

## I.    INTRODUCTION

This case presents a multi-million dollar dispute between an insurer, FM, and its policyholder, Columbia. The basis for the dispute is set out in detail in Columbia's complaint. Columbia purchased property and business interruption insurance coverage from FM for the April 2006 – April 2007 policy year, and for several years beforehand. In purchasing insurance coverage from FM, Columbia provided FM with detailed business information, including specific information regarding Columbia's processes, finances, and business plans. FM never questioned the Business Interruption values or worksheets that FM used to calculate Columbia's premiums. Columbia, in turn, relied upon FM to issue business interruption coverage that was consistent with the financial and business information Columbia submitted. Understandably, Columbia expected FM to adjust business interruption claims in a manner consistent with the business plans upon which FM based the premiums it charged.

On June 12, 2006, an unusually severe hail storm struck central Oregon. Sixty-six Columbia aircraft, including 33 that were insured by FM, suffered hail damage. As a result, Columbia was forced to interrupt its normal business operations and instead to devote substantial efforts to repair the hail-damaged aircraft. As a direct result of the physical damage to the FM-insured aircraft and the resulting interruption of production and business operations, Columbia sustained economic losses. Columbia looked to FM to cover those losses, pursuant to the terms of the business interruption and extended indemnity coverage that FM had sold to Columbia.

**Page 1** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

Columbia expected FM to fully and fairly adjudicate the business interruption claim, consistent with the terms of the policy and consistent with the financial and business information that Columbia had provided to FM over the years. Instead, FM initially refused to acknowledge any business interruption loss. FM then proceeded to unreasonably delay resolution of Columbia's claim, repeatedly requesting additional information and refusing to adjust the claim on the same terms that FM had used to set the premiums it charged. Ultimately, FM paid less than four percent (4%) of the business interruption and extended indemnity losses suffered by Columbia. FM's failure to promptly pay Columbia's legitimate claims led directly to a host of other business and financial problems for Columbia, ultimately resulting in bankruptcy and a below-value sale of Columbia's assets.

Only then, when it had become clear that FM was considering only its own financial interests, and not those of its insured, did Columbia file suit. Columbia's complaint includes causes of action for breach of contract, bad faith breach of the covenant of good faith and fair dealing, and intentional interference with existing and prospective economic advantage. The complaint also seeks attorneys' fees and prejudgment interest, as authorized under Oregon law, and punitive damages. All of Columbia's claims for relief are well-supported by factual allegations.

FM now seeks to dismiss Columbia's claims for bad faith and intentional interference, arguing that Columbia has failed to state a claim upon which relief can be granted. FM also attacks the measure of damages alleged by Columbia, Columbia's claims for attorneys' fees and prejudgment interest, and Columbia's claim for punitive damages. As discussed in detail below, FM's motions fail on a number of levels:

**Page 2 -** **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
AND/OR STRIKE**

- FM's motion to dismiss Columbia's bad faith claim fails because Columbia's complaint alleges facts that support a "special relationship" which gives rise to tort duties. Under current Oregon law, whether there is a special relationship sufficient to implicate tort duties is a fact-specific, case-by-case analysis. Thus, Columbia's bad faith claim is thus not properly subject to a Rule 12 motion to dismiss.

- FM's motion to dismiss Columbia's intentional interference claim fails because Oregon law specifically authorizes such claims by policyholders against insurers. At best, FM misconstrues the nature of Columbia's claim. Columbia has alleged facts supporting each element of a claim for intentional interference, and FM's motion to dismiss should be denied.

- FM's motions to dismiss and/or strike Columbia's claims for attorneys' fees are wholly unsupported and unnecessary. Oregon law explicitly recognizes a right to attorneys' fees on Columbia's breach of contract claim. Under Oregon law, fees incurred on issues common to the contract and tort claims are also recoverable.

- FM's motions regarding Columbia's claim for prejudgment interest are procedurally improper. Moreover, Columbia has properly pleaded an entitlement to prejudgment issues, and FM's challenges to the timing or amount of prejudgment interest are not the proper subject of Rule 12 motions.

- Columbia has alleged facts in support of Columbia's claim that FM acted with malice, showed a reckless and outrageous indifference to a highly unreasonable risk of harm, and acted with a conscious indifference to the welfare of others.

**Page 3 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

Accordingly, FM's motion to strike Columbia's claims for punitive damages should be denied.

FM's real problem with Columbia's claims appears to arise from the fact that this is not a typical business interruption claim. As FM notes in its brief, Columbia's claim is different from the more common business interruption claim, such as "where part of a factory's assembly line [is] damaged and the insured is unable to produce goods." FM is also correct when it states that "[t]he hail storm did not damage CAM's assembly line." (Memorandum in Support of Defendant's Motions, p. 2). FM then wrongly concludes, however, that the hail storm did not prevent Columbia from making planes.

As alleged in the complaint, the hail storm forced Columbia to divert resources from production and other ordinary business operations, and instead focus on repairing damage to FM-insured aircraft. Production and sales were impacted in very real way. Columbia suffered a business interruption loss that fully falls within the terms of coverage that FM provided. Indeed, the fact that FM ultimately paid a small fraction of Columbia's business interruption claim demonstrates that FM's policy covered Columbia's business interruption losses caused by the hail storm. That this is not a "typical" business interruption claim does not excuse FM's failure to adjust Columbia's claim in good faith. FM's motions should be denied in their entirety, and Columbia should be allowed to proceed with the prosecution of its claims.

## II.    SUMMARY OF RELEVANT FACTS

In ruling on a motion to dismiss under Rule 12(b)(6), "the court must accept all facts alleged in a well-pleaded complaint as true and construe them in a light most favorable to the plaintiff." *Perez v. Nike, Inc.*, 2008 WL 282271 (D.Or. 2008) (*citing Karam v. City of Burbank,*

**Page 4** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

352 F.3d 1188, 1192 (9th Cir. 2003).  The following facts are alleged in Columbia's complaint,

and, together, defeat each of defendant's motions to dismiss and/or strike:

- This case is brought by an aircraft manufacturer against its insurer for failure to pay business interruption damages under a business interruption insurance policy. Columbia is a recognized leader in the manufacture and sale of single engine aircraft.  Columbia's airplanes are manufactured with a state-of-the-art process using composite materials that make them lighter and faster than traditional metal aircraft.  Columbia's inventory of airplanes was damaged by a hail storm—an insured peril under the defendant's policy—and, as a result, Columbia suffered a severe dislocation of its operations and cash flow.  FM failed to pay the amount of damages caused by the business interruption, despite repeated requests to do so. Ultimately, Columbia was forced to conclude a sale of its business out of bankruptcy for a value that was substantially below the true value of the plaintiff's business before the occurrence of the business interruption.  This action is brought to enforce the terms of FM's business interruption insurance policy and to recover the consequential damages caused by FM's failure to honor the policy. (Complaint, Paragraph 1).

- Columbia had developed specific business plans aimed at increasing its production, sales, and market share.  Prior to June 2006, Columbia had begun to meet its goal of producing five aircraft per week.  (Complaint, Paragraph 7).

- On June 12, 2006, the Bend, Oregon, area was hit with an unusually severe hail storm.  The hail storm damaged buildings, cars, and windows throughout the Bend area. (Complaint, Paragraph 9).

- At the time of the June 12, 2006 hail storm, sixty-six Columbia aircraft were outside at Columbia's Bend production facility, and suffered hail damage.  Thirty-three of these were unfueled aircraft, and each of these unfueled aircraft was insured by FM.  (Complaint, Paragraph 10).

- All sixty-six of the hail-damaged aircraft required repairs and repainting before they could be delivered to customers.  Columbia was forced to interrupt its normal business operations and instead to devote substantial efforts to the repair of the hail-damaged aircraft.  (Complaint, Paragraph 11).

- FM visited Columbia's facility shortly after the hail storm.  At that time, FM told Columbia that FM did not believe that the hail storm could give rise to a covered business interruption.  (Complaint, Paragraph 12).

- FM provided Columbia with "Business Interruption" insurance coverage, including coverage for an "extended period of indemnity," at the time of the hail

**Page 5 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

storm, with policy limits of over $33 million.  (Complaint, Paragraphs 14 – 17).

- Immediately following the June 12, 2006 hail storm, Columbia suffered a severe and prolonged interruption of its ability to continue its ordinary business operations.  Columbia was forced to divert resources from producing new airplanes pursuant to its business plans to repairing the hail-damaged aircraft.  As a direct result of the hail damage to airplanes insured by FM, Columbia's ability to produce, market, and sell airplanes was substantially and adversely impacted. (Complaint, Paragraph 18).

- Over the months following the June, 12, 2006 hail storm, Columbia and Dempsey, Meyers worked to calculate and document Columbia's insured Business Interruption loss.  On or about December 18, 2006, Dempsey, Meyers submitted its calculations and Summary of Loss to FM.  Dempsey, Meyers and Columbia documented a covered Business Interruption loss of $8,345,022.  The Dempsey, Meyers claim submission included 25 separate schedules and 7 exhibits that set forth detailed information regarding Columbia's lost revenue, aircraft unit costs, cost details for separate manufacturing, customer care, engineering, and sales and marketing costs, and historical income statements.  At FM's request, Columbia subsequently submitted a "Sworn Statement in Proof of Loss" in support of Columbia's Business Interruption claim.  (Complaint, Paragraph 20).

- Pursuant to OAR 836-080-0230, FM should have completed its investigation of Columbia's Business Interruption claim no later than 45 days after receipt of the claim, in other words, by January 31, 2007.  However, FM did not do so and, instead, FM requested additional information in response to Columbia's Business Interruption claim.  Notwithstanding Columbia's detailed and comprehensive claim submittal, FM requested 20 additional categories of claim documentation. (Complaint, Paragraph 21).

- FM continued to delay any resolution of Columbia's Business Interruption claim, making further requests for information, requiring a sworn proof of loss, and refusing to make any determination on Columbia's Business Interruption loss.  As a result of FM's refusal to pay the covered loss, Columbia suffered further business losses.  (Complaint, Paragraph 23).

- On April 27, 2007, Columbia wrote to FM, enclosing a sworn proof of loss and enclosing additional documentation regarding lost or cancelled sales, which had been requested by FM.  In its April 27, 2007 letter, Columbia informed FM that Columbia had experienced significant financial hardship as a result of the hail storm and resulting business interruption.  Columbia also told FM that further delay in the resolution of the Business Interruption claim would increase and extend Columbia's financial difficulties.  (Complaint, Paragraph 24).

**Page 6 -** **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

- On or about May 9, 2007, Columbia wrote to FM, requesting a 50 percent advance on its Business Interruption claim. FM refused, without explanation, to provide any advance payment. On May 31, 2007 – nearly one full *year* after the hail storm – FM finally authorized a $300,000 advance on Columbia's $8.3 million Business Interruption claim. FM later paid another $41,385. (Complaint, Paragraph 25).

- After Columbia submitted its Business Interruption claim in December 2006, Columbia's financial condition continued to worsen due to the impact of the June 2006 hail storm. Columbia repeatedly informed FM that FM's unreasonable failure to promptly pay the covered Business Interruption loss was causing substantial economic harm to Columbia. (Complaint, Paragraph 26).

- On or about June 12, 2007, FM representatives met with Columbia and presented FM's calculation of Columbia's insured Business Interruption loss. FM calculated Columbia's Business Interruption loss at $341,385, more than $8 million less than the loss suffered by Columbia and documented in submissions by Columbia and its accountants, Dempsey, Meyers. (Complaint, Paragraph 27).

- FM has refused to make any revisions to its prior position, and FM has refused to make any further payment to Columbia. Instead, in response to Columbia's amended claim and the "rebuttal" presented by the insurance broker, Frank Crystal, FM requested 11 additional categories of documentation from Columbia, in addition to the voluminous information and data that Columbia previously had provided. FM requested this information solely for purposes of delay and harassment, and FM never intended to fairly consider Columbia's Business Interruption claim. (Complaint, Paragraph 29).

- FM's wrongful refusal to pay Columbia's covered Business Interruption claim was a substantial factor in forcing Columbia to seek bankruptcy protection. (Complaint, Paragraph 31).

- The $26.4 million paid for Columbia's business in the late 2007 bankruptcy sale was substantially below the value of Columbia's business immediately before the occurrence of the hail storm on June 12, 2006. (Complaint, Paragraph 33).

- When FM sold Columbia the FM Policy, including Business Interruption coverage with an "extended period of indemnity," FM knew, or should have known, that Columbia could be placed in financial distress if FM failed to timely and fully pay Columbia money due and owing under the Policy's Business Interruption Coverage. FM had insured Columbia for four years before the June 2006 hail storm, and FM knew, or should have known, the type of lost income that Columbia was likely to suffer in the event of a covered business interruption. After the hail storm, FM was on notice that its failure to timely or fully pay

**Page 7 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

monies owed to Columbia under the FM Policy would place Columbia in serious financial peril.  (Complaint, Paragraph 34).

- If FM had paid timely and fully Columbia the monies due and owing to Columbia under the FM Policy, Columbia would not have been forced to file the voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  (Complaint, Paragraph 35).

- Columbia's need to avail itself of the bankruptcy laws and the resulting below-value sale was a foreseeable consequence of FM's failure to timely and fully pay monies due and owing to Columbia under the FM Policy.  (Complaint, Paragraph 36).

- FM knew that Columbia purchased Business Interruption insurance in order to protect against interruption of Columbia's aircraft manufacturing business and to preserve the cash flow and business relations necessary to sustain that business. (Complaint, Paragraph 45).

- In agreeing to insure Columbia for over $33 million against the adverse business impacts of a business interruption, and in issuing the FM Policy, FM assumed a special duty of care toward Columbia.  **Columbia provided FM with specific information regarding Columbia's processes and business plans.  Columbia relied on FM to provide Columbia with Business Interruption insurance that would adequately protect Columbia from financial loss and damages arising from an event such as the June 12, 2006 hail storm**.  (Complaint, Paragraph 47, emphasis added).

- From the inception date of the FM Policy through the date on Columbia filed for bankruptcy, Columbia maintained contractual and economic relations with various parties, including, but not limited to, suppliers, customers, employees, and numerous investors and creditors.  (Complaint, Paragraph 51).

- From the inception date of the Policy through the date on which Columbia filed for bankruptcy, Columbia intended to maintain and expand upon those contractual and economic relationships.  (Complaint, Paragraph 52).

- FM's failure to timely and fully pay Columbia's claims under the FM Policy interfered with Columbia's existing and prospective contractual and economic relationships with the parties discussed above.  (Complaint, Paragraph 53).

- As a result of FM's failure to timely and fully pay Columbia's claims under the FM Policy, Columbia was unable to purchase materials from its suppliers, pay off existing debts to those and other suppliers, produce or sell aircraft to Columbia's purchasers, compensate Columbia's employees, and pay existing debts to

**Page 8** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

creditors and others to whom Columbia owed money.  (Complaint, Paragraph 54).

- FM's failure to timely and fully pay Columbia's claims under the FM Policy is a violation of ORS 746.230(1)(f), because FM did not attempt, in good faith, to promptly and equitably settle those claims in which FM's liability had become reasonably clear.  (Complaint, Paragraph 55).

- FM's acts were intentional, because FM knew or should have known that its failure to timely pay would result in the consequences described above. (Complaint, Paragraph 56).

- FM's interference with Columbia's existing and prospective economic and contractual relationships was accomplished through improper means, because FM engaged in that interference in violation of the FM Policy.  (Complaint, Paragraph 57).

- FM's interference with Columbia's existing and prospective economic and contractual relationships was accomplished through improper means, because FM engaged in that interference in violation of ORS 746.230(1)(f).  (Complaint, Paragraph 58).

- As a direct and proximate result of FM's bad faith breach of the implied covenant of good faith and fair dealing, Columbia was forced to seek the protection of the Bankruptcy Court and to sell its aircraft manufacturing business for a sale price that was less than the true value of Columbia's business immediately prior to the hail storm on June 12, 2006, causing damages to Columbia in an amount to be proven at trial, plus pre-judgment interest at 9% annually running from January 31, 2007.  (Complaint, Paragraph 59).

### III.    RESPONSE TO DEFENDANT'S MOTIONS

**(A)    The Legal Standard for Addressing Rule 12 Motions**

FM has moved to dismiss certain of Columbia's claims under Fed.R.Civ.P. 12(b)(6),

contending that the complaint fails "to state a claim upon which relief can be granted."  Judge

Jones recently summarized the legal standards for addressing a motion to dismiss in *Halliburton,*

*II v. County of Linn*, 2007 WL 4565238 (D.Or. 2007):

> To survive dismissal for failure to state a claim pursuant to Rule 12(b)6), a complaint must contain more that a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the

**Page 9** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1965 (2007). "the pleading must contain something more … than … a statement of facts that merely creates a suspicion [of]a legally cognizable right of action." *Id.*, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure Section 1216, pp. 235-236 (3rd Ed. 2004); *see also* Fed.R.Civ.P. 8(a).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

*Halliburton II*, *supra*.

    "For purposes of the motion to dismiss, the complaint is liberally construed in favor of

the plaintiffs, and its allegations are taken as true." *Mayfield v. U.S.*, 504 F.Supp.2d 1023, 1029

(D.Or. 2007), *citing Rosen v Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). "Once a claim has

been adequately stated, it may be supported by 'showing any set of facts consistent with the

allegations in the complaint.'" *Mayfield*, *supra* at 1029, *quoting Bell Atlantic*, *supra*, 127 S.Ct. at

1960.[1]

**(B)    Response to Motion One:  Columbia's Bad Faith Cause of Action States a Claim Upon Which Relief Can be Granted.**

**1.    Oregon law imposes tort duties on parties to a "special relationship."**

    A party who enters a "special relationship" with another party assumes duties to the other

party, and a breach of those duties sounds in tort.  In *Georgetown Realty, Inc. v. The Home Ins.*

*Co.*, 313 Or. 97, 831 P.2d 7 (1992), an insured sued his insurer for "breach of fiduciary duty"

---

[1] Several decisions from this District have recently described these standards. *See*, *e.g.*, *Perez v. Nike*, *supra*; *Leininger v. Pitts*, 2008 WL 200022 (D. Or. 2008); *Allstate Ins. Co. v. Liberty*, 2007 WL 4165745 (D.Or. 2007).

**Page 10** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

related to the insurer's conduct of the insured's defense of a lawsuit that resulted in a judgment

against the insured in excess of the insured's policy limits.  The "pivotal question" in the case

was whether the insured's breach of fiduciary duty claim was "assertable as a tort claim."  The

*Georgetown Realty* court held that it was:

> We now reach the same conclusion with regard to liability insurers that this court reached
> in the cases concerning physicians, lawyers, architects, and others.  As in those cases, the
> relationship here is between contracting parties.  When a liability insurer undertakes to
> "defend," it agrees to provide legal representation and to stand in the shoes of the party
> that has been sued.  The insured relinquishes control over the defense of the claim
> asserted.  Its potential monetary liability is in the hands of the insurer.  That kind of
> relationship carries with it a standard of care that exists independent of the contract and
> without reference to the specific terms of the contract.  Therefore, plaintiff's excess claim
> can be brought as a claim for negligence.

*Georgetown Realty*, 313 Or. at 110-11 (citations omitted); *see also Maine Bonding & Cas. Co. v.*

*Centennial Ins. Co.,* 298 Or. 514, 518-19, 693 P.2d 1296, 1299 (1985) ("The insurer is negligent

in failing to settle, where an opportunity to settle exists, if in choosing not to settle it would be

taking an unreasonable risk—that is, a risk that would involve chances of unfavorable results out

of reasonable proportion to the chances of favorable results.").

The *Georgetown Realty* court noted that the nature of the specific relationship, rather than

the titular role of the defendant, controls whether the defendant owes tort duties:

> The form of action for a claim against a fiduciary for breaching a duty of care arising
> from the relationship is not materially different from a claim against a physician, a
> lawyer, or an engineer for breaching a duty of care arising from such a relationship.
> Notwithstanding repeated references by this and other courts to a "breach of a fiduciary
> duty," the form of action is the same, and the theory of recovery—breach of the duty of
> care that the law implies from the relationship—is the same.

*Georgetown Realty*, 313 Or. at 110 n 7.

Only six months after *Georgetown Realty* was decided, the Oregon Supreme Court

explained how "special relationships" can give rise to tort duties.  *Onita Pacific Corp. v. Trustees*

**Page 11** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS**
         **AND/OR STRIKE**

*of Bronson*, 315 Or. 149, 843 P.2d 890 (1992), recognized a tort claim for negligent

misrepresentation.  But the Oregon Supreme Court, wary of finding a "limiting principle" for

duty under this tort, held that categorical rules were inappropriate to the inquiry about whether

the parties had entered into a relationship sufficient to trigger tort duties:

> [R]ather than adopting a black letter "rule," we opt to develop the scope of the duty and
> the scope of recovery on a case-by-case basis, in light of related decisions of this court.
>
> * * *
>
> Having recognized the existence of the tort, the central question in the present case
> becomes whether, during the parties' arms-length negotiations, in addition to a duty of
> honesty, defendants owed plaintiffs a duty to exercise reasonable care in communicating
> factual information to prevent economic losses to plaintiffs.  To resolve this, we examine
> the nature of the parties' relationship and compare that relationship to other relationships
> in which the law imposes a duty on parties to conduct themselves reasonably, so as to
> protect the other parties to the relationship.

*Id.* at 159-60.  On the facts of the case before it – and on review of a motion for directed verdict,

not a motion to dismiss – the plaintiffs in *Onita* did not prevail because the defendants did not

owe any duty "by virtue of a contractual, professional, or employment relationship or as a result

of any fiduciary or similar relationship implied in the law."  *Id*. at 165.  *Onita* holds that, without

more, arm's-length transactions or negotiations between contracting parties do not give rise to

tort duties between the parties.  But that does not end the inquiry.

The task of defining which relationships give rise to tort duties, started in *Georgetown*

*Realty* and *Onita*, was addressed again by the Oregon Supreme Court in *Conway v. Pacific*

*Univ*., 324 Or. 231, 924 P.2d 818 (1996).  The *Conway* court began by analyzing the relationship

between tort and contract claims:

> "[A] contract details the specific obligations that each party owes the other and, if one
> party breaches a term of the contract, that breach will result in contract liability.  For tort
> liability to be imposed, however, a tort duty must exist "*independent of the contract and*

**Page 12** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
AND/OR STRIKE**

> *without reference to the specific terms of the contract*." That duty in tort does not arise from the terms of the contract, but from the *nature of the parties' relationship*.

*Id*. at 237-38 (citations omitted; emphasis in original).  The nature of the parties' relationship, under *Conway*, necessarily depends on the facts specific to the particular relationship between the parties:

> Another way to characterize the types of relationships in which a heightened duty of care exists is that the party who owes the duty has a special responsibility toward the other party.  This is so because the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests.  In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

*Id*. at 240.  The *Conway* court listed several examples of relationships that "may carry a heightened duty of care," including principal-agent, broker-agent, trustee-beneficiary, pledgees-customers, and "a liability insurer who undertakes a duty to defend" its insured.  *Id*. at 239-240.  *Conway* notes only that a liability insurer may be liable to its insured.  *Conway* does not hold that other types of insurers—or any other types of insurance relationships—are categorically immune from tort duty arising from "special relationships."  Contrary to FM's unsupported contention, the Oregon Supreme Court has never "narrowly defined" insurance-related tort relationships to "the duty to defend in the liability insurance context."  Memorandum in Support of Motions, p. 7.

This nuanced approach to duty informed the reasoning behind the Oregon Supreme Court's clarification of tort duty and "special relationships" in *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 26 P.3d 785 (2001).  In *Bennett*, the plaintiff brought tort claims and asserted that the defendant's duty arose from its exertion of "more and more control" over the

**Page 13** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

plaintiff's financial interests.  But *Bennett* holds that the exertion of control, standing alone, is

not enough:

> By concentrating on the fact that [the defendant], over time, exerted more and more
> control over his financial interests, plaintiff misunderstands the fundamental focus of our
> inquiry in *Georgetown Realty* and other "special relationship" cases.  The focus is not on
> the subject matter of the relationship, such as one party's financial future; nor is it on
> whether one party, in fact, relinquished control to the other.  The focus instead is on
> whether the *nature of the parties' relationship itself* allowed one party to exercise control
> in the first party's best interests.  In other words, the law does not imply a tort duty
> simply because one party to a business relationship begins to dominate and to control the
> other party's financial future.  Rather, the law implies a tort duty only when that
> relationship is of the type that, by its nature, allows one party to exercise judgment on the
> other party's behalf.  . . .  We begin by examining all aspects of the relationship between
> the parties to determine whether one had a special responsibility toward the other.  If a
> contract exists, then we may examine that contract to determine the type of relationship
> between the parties.

*Id*. at 161-62.

Bennett establishes that a court presented with the question whether a "special

relationship" arose between the parties must take a "case-by-case" approach and carefully

examine the nature of the particular facts of the case.[2]  This well-settled principle that the factual

record must be fully developed so that a court can meaningfully make the required "case-by-

case" analysis was affirmed in *Jones v. Emerald Pacific Homes, Inc*., 188 Or. App. 471, 71 P.3d

574 (2003), where the court held:

> [T]he inquiry whether such a relationship exists is functional, not formal. . . .  A
> contractual relationship between a product manufacturer and dealer, or between an
> insurer and an insured, may or may not give rise to tort liability, depending on the nature
> of the parties' contracts and their dealings with each other.  Thus, the fact that a
> relationship bears the label "professional" does not, by itself, mean that the relationship
> creates a heightened duty of care.  *In every case, the inquiry is fact-specific*.

---

[2] Notwithstanding this unambiguous precedent, FM seeks to prevent Columbia from further developing the facts in
support of this tort claim so that a court may later have a full record from which to evaluate whether a factfinder
should consider this evidence.

**Page 14** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
         AND/OR STRIKE**

*Id.* at 478. *See also Oregon Life & Health Ins. Guar. Ass'n v. Inter-Regional Fin. Group, Inc.*, 156 Or.App. 485, 497, 967 P.2d 880, 886 (1998) (holding that, unless otherwise established by law, tort duty "must be decided on a 'case-by-case basis,' an analysis that naturally requires the consideration of facts unique to the case at hand.").  *Lewis-Williamson v. Grange Mut. Ins. Co.*, 179 Or.App. 491, 495, 39 P.3d 947, 949 (2002) (following *Oregon Life* and holding that "the nature of the relationship must be decided on a case-by-case basis, depending on the facts").

Oregon's case law, from *Georgetown Realty* to *Bennett*, conclusively establishes that tort duties may be imposed on parties to a "special relationship."  Furthermore, whether such a relationship exists must be determined by an examination of the particular relationship before the court on a case-by-case basis.

Counsel for Columbia is aware of only two Oregon cases that have squarely confronted the propriety of adjudicating a first-party bad faith claim on a pre-discovery motion to dismiss. In a 2003 case involving a first-party property insurance claim, Multnomah County Circuit Court Judge Beckman recognized Oregon's fact specific, case-by-case analysis, and denied an insurer's motion to dismiss the policyholder's bad faith cause of action for failure to state a claim.  *See* Declaration of James T. McDermott, ¶ 3.  Similarly, in a 2000 first-party insurance case, Judge Ashmanskas denied an insurer's motion to dismiss the plaintiffs' claim for breach of the duty of good faith and fair dealing because the plaintiffs had alleged outrageous conduct by the insurer. *Thompson v. Allied Mut. Ins. Co.*, 2000 WL 264318 (D.Or. 2000) ("When all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party, plaintiffs sufficiently pleaded a claim for tortious breach of good faith and fair dealing.") Therefore, a motion for summary judgment – not a motion to dismiss – is the appropriate stage in the case to first address Columbia's bad faith cause of action.

**Page 15** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

### 2.   Columbia's complaint alleges facts which, if proven, would impose tort duties on defendant FM.

In seeking to dismiss Columbia's claim for tortious breach of the duty of good faith and fair dealing, FM quotes selectively from Columbia's complaint, ignores recent developments in Oregon tort law, and seeks to rely on case law that has no bearing on the facts and claims alleged by Columbia.  As discussed in detail above, Oregon recognizes that tort duties can be imposed on parties to a special relationship.  Whether such a relationship exists must be determined on a case-by-case basis.  There is no blanket prohibition on special relationships between insurers and their policyholders.[3]  Although FM may wish for such a prohibition, none exists in Oregon law. Here, Columbia has alleged facts supporting a special relationship between Columbia and FM. Columbia is entitled to pursue those claims, and to continue to develop supporting facts through discovery.

FM relies primarily on older case law that was decided well *before* the Oregon Supreme Court clarified the case-by-case analysis that must be applied to determine whether parties had the sort of "special relationship" that give rise to tort duties.  For example, FM cites *Farris v. U.S. Fid. & Guar. Co.*, 284 Or. 453, 587 P.2d 1015 (1978).  But the legal framework in which *Farris* was decided has been fundamentally altered by more recent Oregon case law in the last quarter century.  In *Farris*, the liability insurer wrongfully refused to assume the defense of its

---

[3] FM does, at least, recognize the possibility of a special relationship, and resulting tort duties, with regard to "the duty to defend in the liability insurance context," citing *Georgetown Realty*, *supra*. (Memorandum in Support of Defendant's Motions, p. 7).  Courts in other jurisdictions have recognized, however, that there is no compelling reason to distinguish between first-party and third-party claims when considering an insurer's obligation of good faith and fair dealing.  *See*, *e.g.*, *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 688, 271 N.W.2d 368 (1978) ("The rationale which recognizes an ancillary duty on an insurance company to exercise good faith in the settlement of third-party claims is equally applicable and of equal importance when the insured seeks payment of legitimate damages from his own insurance company").

**Page 16** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

insured and, at trial, the insured recovered for "emotional suffering" and punitive damages. *Farris* reversed the judgment because, under *Santilli* and Oregon law in 1978, the insurer's "failure to undertake representation of plaintiffs which required them to represent themselves *could only have been a breach of contract*, and, in cases of breach, the law is clear that no recovery for mental distress because of the threat of pecuniary loss is recoverable." *Id.* at 463-65 (emphasis added). But *Farris* was decided long before *Georgetown Realty* (1992), *Onita* (1992), *Conway* (1996), and *Bennett* (2001) established that the same conduct could constitute both a tort and a breach of contract, depending on whether—outside of the four corners of the contract—the parties had entered into a "special relationship" sufficient to impose duties sounding in tort.

FM fails to recognize this sea change in Oregon law. Ever since Oregon has recognized tort duties for parties in "special relationships," *Farris*'s antiquated wall between contract and tort has been torn down:

> The lesson to be drawn from this court's cases discussing the choice between contract and tort remedies is this: When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation. That is so whether the breach of contract was negligent, intentional, or otherwise. *In some situations, a party may be able to rely on either a contract theory or a tort theory or both.*

*Georgetown Realty*, 313 Or. at 106 (emphasis added). *See also Butterfield v. State*, 163 Or. App. 227, 235, 987 P.2d 569, 573 (1999), *rev denied*, 330 Or. 252 (2001) (citing *Georgetown Realty* and holding that "under Oregon law, a tort action may arise from a contractual relationship when it is based on a duty that is independent of the specific terms of the contract"); *Fessler v. Quinn*,

**Page 17** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

143 Or. App. 397, 400, 923 P.2d 1294, 1296 (1996) (citing *Georgetown Realty* and holding,

"Defendant is incorrect that alternative claims of tort and contract cannot be pleaded based on

the same facts.  An identical factual setting may give rise to both a contract theory and a tort

theory.  If the court dismissed the negligence claim on the ground that the claim was based on

the same conduct alleged by plaintiffs to have constituted the breach of contract, that was

error.").  *See also Georgetown Realty, Inc. v. The Home Ins. Co*., 102 Or. App. 611, 616, 796

P.2d 651, 654 (1990), *overruled by*, *Georgetown Realty, Inc. v. The Home Ins. Co*., 313 Or. 97,

831 P.2d 7 (1992) ("More fundamentally, an insurer's defective handling of its insured's defense

*is* a breach of its contract.  The question, therefore, is not which of two alternatives is *the*

available remedy, but whether the contract remedy that clearly is available should be

supplemented by a second.") (emphasis in original).

 For the same reasons that *Farris* cannot avail FM, FM's reliance on *Employers' Fire Ins.

Co. v. Love It Ice Cream*, 64 Or. App. 784, 670 P.2d 160 (1983) is misplaced:  like *Farris*, *Love

It* relies on the outdated categorical approach to tort duty.  *Love It* categorically holds that an

insured cannot bring "first-party" claims against the insurer for the insurer's bad-faith refusal to

pay policy benefits because such a refusal to pay "sounds in contract and is not an actionable tort

in Oregon."  *Id*. at 791 (relying on *Santilli* and *Farris*).  This older, categorical approach to tort

duties was rejected by the Oregon Supreme Court in *Georgetown Realty* and its progeny.  Under

modern Oregon case law, the inquiry into tort duties must focus on a case-by-case analysis of the

particular facts before the court and the relationship between the parties, apart from the contract

between them.  *See Bennett*, 332 Or. at 161 ("The focus instead is on whether the *nature of the

parties' relationship itself* allowed one party to exercise control in the first party's best

interests."); *Strader v. Grange Mut. Ins. Co*., 179 Or. App. 329, 334, 39 P.3d 903, 906, *rev*

**Page 18** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
            AND/OR STRIKE**

*denied*, 334 Or. 190 (2002) ("[T]he cases establish a functional as opposed to a formal analysis in determining whether the special relationship exists; in other words, the crucial aspect of the relationship is not its name, but the roles that the parties assume in the particular interaction where the alleged tort and breach of contract occur.").

FM claims that Columbia's bad faith "theory" "was most recently tested and rejected in *Allstate Ins. Co. v. Breeden*, 2007 WL 4480759 (D.Or. Dec. 17, 2007)." (Memorandum in Support of Defendant's Motions, p. 5). FM's own description of that case, however, demonstrates that it has no bearing on Columbia's bad faith claims against FM. As FM states in its brief, "[t]he insured in *Breeden* rested his tort claim for bad faith on a theory that ORS 746.230(1)(f) was an actionable duty and that Allstate had acted in bad faith in adjustment of the insured's claim in violation of the Oregon Insurance Code and the standard of care applicable to all insurers doing business in Oregon." *Id.* Columbia, in clear contrast, does not rest its bad faith claim on any violation of Oregon's claims-handling statutes. Rather, Columbia's bad faith claim is based on the special relationship between FM and Columbia, which gave rise to a tort duty of care. Columbia has alleged multiple facts in support of that relationship and in support of FM's breach of its duties. (*See, e.g.,* Complaint, paragraphs 14, 34, 45, 47).[4] Accordingly, Columbia should be allowed to pursue and further develop its tort claim through discovery.

In its motion, FM also attempts to characterize Columbia's bad faith claim as one that is solely based on FM's failure to timely pay a claim that is due under the policy. In doing so, FM selectively quotes from various parts of Columbia's complaint. A thorough reading of

---

[4] In addition, FM fails to note that *Breeden*, a case handled by the same law firm that represents FM here, was *not* decided on a Rule 12 motion to dismiss, but on summary judgment, after the parties had the opportunity to develop the facts through discovery.

**Page 19** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

Columbia's complaint, however, demonstrates that the bad faith cause of action alleges more than just a simple breach of contract claim.  Rather, the complaint plainly states facts giving rise to a special relationship and a corresponding duty of care, as well as FM's breach of that duty of care.  Even FM recognizes that Columbia alleges that "it relied upon FM to provide Columbia with Business Interruption insurance that would adequately protect Columbia from financial loss and damages arising from an event such as the June 12, 2006 hail storm."  (Memorandum in Support of Defendant's Motions, p. 7; Complaint, paragraph 47).  Columbia then goes on to claim that "[s]imply alleging that one party relied upon another is not enough to state a tort claim …"  (Memorandum in Support of Defendant's Motions, p. 7).

        In quoting this **partial** single paragraph from Columbia's 62-paragraph complaint, FM wholly ignores numerous supporting factual allegations in support of Columbia's bad faith claim:

- "FM had insured Columbia for four years prior to the June 12, 2006 hail storm, and **FM had never questioned Columbia's Business Interruption values nor the worksheets used to calculate the premiums that FM charged to Columbia for Business Interruption coverage**."  (Complaint, Paragraph 14).
- "When FM sold Columbia the FM Policy, including Business Interruption coverage with an 'extended period of indemnity,' FM knew, or should have known, that Columbia could be placed in financial distress if FM failed to timely and fully pay Columbia money due and owing under the Policy's Business Interruption Coverage.  **FM had insured Columbia for four years before the June 2006 hail storm, and FM knew, or should have known, the type of lost income that Columbia was likely to suffer in the event of a covered business interruption**.  After the hail storm, FM was on notice that its failure to timely or fully pay monies owed to Columbia under the FM Policy would place Columbia in serious financial peril."  (Complaint, Paragraph 34).

- "FM knew that Columbia purchased Business Interruption insurance in order to protect against interruption of Columbia's aircraft manufacturing business and to preserve the cash flow and business relations necessary to sustain that business." (Complaint, Paragraph 45).

**Page 20** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

- "In agreeing to insure Columbia against the adverse business impacts of a business interruption, and in issuing the FM Policy, FM assumed a special duty of care toward Columbia. **Columbia provided FM with specific information regarding Columbia's processes and business plans. Columbia relied on FM to provide Columbia with Business Interruption insurance that would adequately protect Columbia from financial loss and damages arising from an event such as the June 12, 2006 hail storm**." (Complaint, Paragraph 47) (emphasis added).

Given these specific factual allegations contained in Columbia's complaint, Columbia has, at the very least, alleged facts supporting a special relationship giving rise to duties in tort. Indeed, Columbia's detailed allegations far exceed the pleading requirements of Rule 8. Here, Columbia's pleading contains much more than a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

Columbia's complaint contains allegations which will permit the introduction of evidence to satisfy the elements of its breach of the duty of good faith and fair dealing claim. "Under Fed.R.Civ.P. 12(b)(6), once a claim has been stated adequately, it may be supported by 'showing any set of facts consistent with the allegations in the complaint.'" *Leininger v. Pitts*, 2008 WL 200022 (D.Or.), *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "Moreover, the court 'presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Halliburton, II, supra*, *quoting Nat'l Org. for Women v. Scheidler*, *supra*. The facts asserted in Columbia's complaint will therefore allow Columbia to develop through discovery and introduce additional evidence of the parties' special relationship, including evidence that FM assumed tort duties outside of its express contractual obligations.

Under the Oregon Supreme Court's modern jurisprudence regarding tort duties arising from "special relationships," each relationship must be examined on a case-by-case basis, focusing on the nature of the parties' relationship. This approach and its concomitant inquiry,

**Page 21** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

which are necessarily fact specific, have replaced the "categorical" approach to tort duty in older cases like *Farris* and *Love It*.  The Oregon Supreme Court has rejected any false dichotomy of assertable claims in favor of examining each "special relationship" on a case-by-case basis.

Thus, this Court should decline FM's premature invitation to dismiss Columbia's claims for breach of the duty of good faith and fair dealing.  As the Oregon Supreme Court has made clear, at the very least, a closer examination of the relationship between FM and Columbia must be made.  Such a "case-by-case" examination cannot be made in the context of a Rule 12 motion.[5]  Accordingly, FM's motion to dismiss should be denied.

**(C)    Response to Motion Two:  Columbia's Intentional Interference Cause of Action States a Claim Upon Which Relief Can be Granted.**

**1.    Oregon law specifically recognizes a claim for intentional interference in situations such as those presented here.**

To properly state a counterclaim for intentional interference with economic relations, Columbia must allege (1) the existence of a professional or business relationship, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.  *See McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841, 844 (1995).  Columbia has done this.  *See Perez v. Nike, Inc.*, *supra* ("When ruling on [a 12(b)(6)] motion, the court must accept all facts alleged in a well-pleaded complaint as true and construe them in a light most favorable to the plaintiff.").

---

[5] Inexplicably, and without citation to any authority, FM also complains that the measure of damages sought in Columbia's bad faith claim is somehow inappropriate.  Columbia disagrees with FM's unsupported assertion.  In any event, as discussed further below, issues regarding the measure of damages are not properly subject to a motion to dismiss where the damages allegations will ultimately turn on facts that need to be developed through litigation.  *James River Ins. Co. v. Breitenbush Hot Springs & Conference Center*, 2006 WL 3628054 (D.Or. 2006).

**Page 22** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

FM's motion to dismiss Columbia's intentional interference claim is confusing, at best. FM first reiterates its argument that it owed no duties that could give rise to liability in tort. (Memorandum in Support of Defendant's Motions, pp. 10-11).  As discussed in detail above, FM's argument, which is really directed toward Columbia's bad faith claim, fails under current Oregon law.

FM next attempts to characterize Columbia's intentional interference claim as one for "violation" of the Unfair Claims Settlement Practices Act.  But this argument cannot avail FM because Columbia alleges its claim for tortious interference as an *independent* tort, not an "actionable" claim under the Act.  Under *McGanty*, the interference of a third party must be "accomplished through improper means or for an improper purpose."  *McGanty*, 321 Or. at 535. In its intentional interference claim, Columbia does not allege that FM's violations of the Act are actionable under the Act itself; Columbia cites the Act merely because the Act establishes the *standard* by which FM's conduct is to be judged.  Violating this standard shows that FM's conduct has been "improper" under *McGanty*.  *See Top Service Body Shop, Inc. v. Allstate Ins. Co.,* 283 Or. 201, 209-10, 582 P.2d 1365, 1371 (1978) (holding that the "wrongful" nature of alleged conduct may be satisfied by "reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession"); *cf. Aylett v. Universal Frozen Foods Co*., 124 Or. App. 146, 152 n 1, 861 P.2d 375, 378 (1993) (holding that "conduct that does not constitute a breach of contract may nonetheless be tortious, and some conduct may be both a breach of contract and tortious.  In short, *Georgetown Realty* does not require plaintiffs to prove any special relationship to defendant in order to proceed with a claim for tortious interference with a business relationship.").

**Page 23** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
AND/OR STRIKE**

As even FM acknowledges, Oregon law explicitly recognizes claims by policyholders against insurers for tortious interference. *See Love-It Ice Cream*, *supra*, 64 Or.App. at 791 ("Nothing in *Farris*, however, precludes an insured from bringing a tort action against its insurer for wrongful interference with business relationships."). FM seems to argue, however, that the wrongful conduct alleged by Columbia is somehow not "wrongful" enough. At least for purposes of addressing a Rule 12 motion, FM is plainly wrong. Indeed, *Top Service Body Shop* specifically recognized that the "wrongful" nature of conduct could be proven by, among other things, "reason of a statute or other regulation." This is precisely what Columbia has alleged, and Columbia should be allowed to pursue its properly pleaded claim.

Finally, FM argues that Columbia's allegations regarding FM's knowledge and tortious intent are somehow insufficient. Interestingly, in support of its argument, FM points not to cases adjudicating Rule 12 motions, but rather cases on appeal after jury trial and cases adjudicating motions for directed verdict or motions for summary judgment. *Willamette Quarries v. Wodtli*, 308 Or. 406, 781 P.2d 1196 (1989) (reviewing motion for directed verdict); *Northwest Natural Gas Co. v. Chase Gardens,* 328 Or. 487, 982 P.2d 1117 (1999) (appeal after trial, discussing facts it must present to reach the jury); *Straube v. Larson,* 287 Or. 357, 600 P.2d 371 (1979) (reviewing summary judgment rulings).

Obviously, the standards on directed verdict or summary judgment are dramatically different, because the parties have had the opportunity to develop and present the facts. The evidence of FM's knowledge and intent cannot be properly examined in the context of a Rule 12 motion. Rather, this Court must look to the allegations contained in Columbia's complaint alone, taking those allegations as true. Columbia alleges that FM's interference with Columbia's existing and prospective economic contractual relationships was knowing and wrongful.

**Page 24** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

(Complaint, paragraphs 24, 26, 34, 36, and 56). That is sufficient for pleading purposes, and FM's motion should be denied.

> **2.    Defendant's challenge to the damages sought in Columbia's claim for intentional interference is not the proper subject of a motion to dismiss.**

FM spends considerable space in its brief arguing that the measure of damages alleged in Columbia's intentional interference claim is somehow improper. Whatever its merits (and there are none), FM's purported challenge to the measure of damages has no place in a Rule 12(b)(6) motion to dismiss. Measure of damages issues are not properly the subject of a motion to dismiss, because the propriety of damages allegations turn on facts that need to be developed through further litigation. *James River Ins. Co. v. Breitenbush Hot Springs & Conference Center*, 2006 WL 3628054 (D.Or. 2006) ("Determinations of whether rescission violated a policy term and whether the cost of replacement coverage is the proper measure of damages must await development of the facts.").

> **3.    Columbia has alleged a proper measure of damages.**

Even if a challenge to Columbia's damages allegations was proper, it would necessarily fail. If Columbia prevails on its intentional interference claim, it will be entitled to the damages sought. A plaintiff is generally able to recover all damages caused by tortious conduct that were reasonably foreseeable. Indeed, in addressing claims for intentional interference, the Oregon Supreme Court has allowed a range of damages beyond the value of the economic relationship lost, including consequential damages and emotional distress damages. *Mooney v. Johnson Cattle Co., Inc.*, 291 Or. 709, 634 P.2d 1333 (1981). Similarly, the Restatement of Torts (Second) recognizes that a claim for intentional interference can give rise to a wide range of

**Page 25** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

recoverable damages, including "consequential losses for which the interference is a legal

cause." Restatement (Second) Torts, Section 774A(1).

Here, Columbia has plainly alleged all of the elements of the tort of intentional

interference with existing and prospective economic advantage. Columbia has alleged facts

which, if proven, would impose liability. Columbia has alleged specific, foreseeable resulting

damages.[6] Nothing more is required to survive a motion to dismiss, and FM's motion should be

denied.

**(D)    Response to Motion Three:  Columbia's Claim for Attorney Fees is Appropriate.**

In its "Motion Three," FM broadly attacks Columbia's Fourth Claim for Relief, which

seeks attorney fees pursuant to O.R.S. 742.061.  That Oregon statute provides, as FM

acknowledges, that

> if settlement is not made within six months from the date proof of
> loss is filed with an insurer and an action is brought in any court of
> this state upon any policy of insurance of any kind or nature, and
> the plaintiff's recovery exceeds the amount of any tender made by
> the defendant in such action, a reasonable amount to be fixed by
> the court as attorney fees shall be taxed as part of the costs of the
> action and any appeal thereon.

FM provides no explanation as to why it does not believe Columbia's claim for statutory

attorney fees cannot properly be stated as a claim for relief.  Indeed, FM does not argue that

Columbia will not be entitled to attorney fees if Columbia prevails on its breach of contract

claim.  FM cites no authority holding that the claim as pleaded is in any way improper, and FM's

motion should be denied.

---

[6] Indeed, Columbia repeatedly advised FM that FM's failure to properly and timely pay the business
interruption claim was causing substantial damage to Columbia's business.  (Complaint, paragraphs 24,
26, 34).

**Page 26 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
        AND/OR STRIKE**

FM's real complaint appears to be that Columbia is somehow seeking to recover fees to which Columbia is not entitled. This is not true. However, at this point in the litigation, addressing only the complaint, it is impossible to determine what, if any, fees should appropriately be awarded. Under current Oregon law, Columbia acknowledges that fees incurred **solely** with respect to Columbia's tort claims are not recoverable. However, where claims for which attorneys fees are provided contain common issues with claims for which fees are not provided, Oregon law does not allow this Court to apportion legal fees for work done relating to that issue; rather, when fee claims are intertwined with non-fee claims, an award of attorney fees for all work on the intertwined claims on both claims is proper. *See Sunset Fuel & Engineering Co. v. Compton*, 97 Or.App. 244, 249, 775 P.2d 901, *rev. den*. 308 Or. 466, 781 P.2d 1215 (1989) ("Attorney fees need not be apportioned when they are incurred for representation on an issue common to a claim in which fees are proper and one in which they are not.") Thus, fees incurred with regard to issues common to both Columbia's contract and tort claims for insurance bad faith claims will be recoverable. What fees relate to what claims will ultimately involve issues of fact. Certainly, those issues cannot be addressed now in the context of a Rule 12(b)(6) motion.

**(E)  Response to Motions Four and Five:  Defendant's Motions to Strike Regarding Attorney Fees Should be Denied.**

FM's "Motion Four" and "Motion Five" seek to strike attorney fee requests from paragraph D of the prayer in Columbia's complaint. Paragraph D prays for "[o]n the Fourth Claim for Relief, reasonable attorneys'' fees and costs incurred by plaintiff in this case, pursuant to O.R.S. 742.061. In its motions, FM argues that the "Court should strike CAM's claim for

**Page 27** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

attorney fees" from Columbia's Second and Third Claims for Relief, on the grounds that those claims sound in tort.

Interestingly, a review of Columbia's complaint finds nothing to strike in response to FM's motion. Neither Columbia's Second nor the Third Claim for Relief seeks attorneys' fees in the body of the complaint. Although FM refers to those causes of action, FM's real complaint appears to be directed only at Columbia's prayer. The prayer, however, is not part of the cause of action. *Love It Ice Cream*, *supra*, 64 Or.App. at 792. There is simply nothing to strike, and FM's motion should be denied.

As discussed above, Columbia acknowledges that, under current Oregon law, Columbia will not be able to recover attorney fees for work that relates solely to its tort claims. However, Columbia will be entitled to attorney fees on its contract claim. Columbia will also be entitled to attorney fees for work on issues that are common to the contract and tort claims. Thus, Columbia's claim for attorney fees is properly pleaded, and FM's motions should be denied.

**(F)**     **Response to Motions Six through Eight: Columbia's Claims for Prejudgment Interest are Appropriately Stated.**

In its Motions Six through Eight, FM attacks the claims for prejudgment interest in Columbia's First, Second, and Third Claims for Relief. Essentially, FM is challenging the prayer, and not the substance of the causes of action. The prayer is not part of the causes of action, however. *Love It Ice Cream*, *supra* at 792; *see also Williams v. Stockman's Life Ins.*, 250 Or. 160, 167 (1968) ("The prayer is no part of the cause of suit or action and ordinarily a party is entitled against answering defendants to any relief warranted by the facts set up in his complaint and the proof."). Here, the facts pleaded by Columbia will entitle Columbia to prejudgment interest, and FM's motions to strike are inappropriate.

**Page 28** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

The Oregon Court of Appeals addressed the pleading requirements for prejudgment interest in *Laursen v. Morris*, 103 Or.App. 538, 799 P.2d 648 (1990). There, the court explained:

> A party must specifically plead a foundation for prejudgment interest. *Gardner v. Meiling*, 280 Or. 665, 676, 572 P.2d 1012 (1977); *Lithia Lumber Co. v. Lamb*, 250 Or. 444, 443 P.2d 647 (1968). When there are different claims for relief, the pleadings and the prayer must request interest on each claim. *Carlson v. Blumenstein*, 54 Or.App. 380, 385, 635 P.2d 380 (1981). Nonetheless, with respect to stating a claim for prejudgment interest, the prayer is not part of the statement of the claim. Only if the facts pleaded are sufficient to state a claim for it may prejudgment interest be awarded. See *Contractors, Inc. v. Tri-County*, 94 Or.App. 392, 398 n. 7, 766 P.2d 389 (1989).

*Laursen*, 103 Or.App. at 547. *See also Shepherd v. Hub Lumber*, 273 Or. 331, 349, 541 P.2d 439 (1975) (denying prejudgment interest where "the prayer of the complaint did not ask for an allowance of interest, as required by our previous decisions.")

Columbia's complaint complies with the legal requirements for stating a claim for prejudgment interest under Oregon law. Columbia alleges known damages at a specific point in time, at which Columbia should have been fully compensated by FM. The facts stated are sufficient to state a claim for prejudgment interest that withstands a motion to strike.[7] FM does not really argue that the facts pleaded, taken as true, do not state a claim for prejudgment interest. Rather, FM quibbles with the amount of Columbia's damages, and with the time at which prejudgment interest begins to run.

---

[7] Under Fed.R.Civ.P. 12(f), a party may seek to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It can hardly be said that Columbia's claims for prejudgment interest are "redundant, immaterial, impertinent, or scandalous." FM's motions are really disguised motions to dismiss. As noted in this brief, motions to dismiss directed at damages allegations are improper and should be denied. Moreover, the draconian effect of FM's argument, if successful, would strip Columbia's claim for prejudgment interest from the complaint, and then allow FM to later claim it owes no prejudgment interest under *Shepherd* because Columbia did not plead entitlement to interest.

**Page 29** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

FM also makes much of the fact that Columbia did not submit a "Sworn Statement in Proof of Loss" when it provided its summary of loss in December 2006. (Memorandum in Support of Defendant's Motion, p. 21). The lack of a formal proof of loss, however, has no impact on Columbia's claim and FM's obligations. Under Oregon law, an "event or submission is adequate, both for purposes of collecting on the policy itself and for obtaining attorney fees under O.R.S. 742.061, if it accomplishes the *purpose* of a proof of loss. That purpose is 'to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay.'" *Dockins v. State Farm Insurance Company,* 329 Or. 20, 28, 985 P.2d 796 (2000) (*quoting Sutton v. Fire Insurance Exch.*, 265 Or. 322, 325, 509 P.2d 418 (1973). Under this standard, Columbia provided FM with the equivalent of a "proof of loss" as early as July of 2006. Although Columbia has pleaded prejudgment interest running from January 31, 2007, facts developed through discovery may lead to the conclusion that prejudgment interest should begin to run at a much earlier time.

FM's arguments present, at best, fact questions. Questions like those raised by FM simply cannot be addressed in a motion to dismiss, or in a motion to strike. Indeed, prejudgment interest is typically determined *after* a plaintiff prevails on its substantive case. Here, Columbia has properly pleaded an entitlement to prejudgment interest, and should be allowed to prove that entitlement in the litigation. Accordingly, FM's motions should be denied.

**(G)     Response to Motion Nine:  Defendant's Motion to Strike is Inappropriate and Unnecessary.**

The purpose of FM's Motion Nine is unclear from FM's Memorandum. It appears that FM seeks to strike any claim for prejudgment interest from Columbia's claim for attorneys' fees.

**Page 30** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

Columbia has not sought prejudgment interest on its attorneys' fees claim, and there is nothing to strike. FM's Motion Nine should be denied.

**(H)     Response to Motion Ten:  Columbia Has Properly Stated a Claim for Punitive Damages.**

In its Motion Ten, FM seeks to strike the punitive damages allegations from Columbia's bad faith and intentional interference claims and from the prayer.  FM's motion is both procedurally and substantively flawed, and should be denied.

FM's purported motion to strike is procedurally improper, because it is not directed at any "redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  FM's motion is more properly viewed as a motion to dismiss pursuant to Rule 12(b)(6).  In ruling on a motion to dismiss under Rule 12(b)(6), "the court must accept all facts alleged in a well-pleaded complaint as true and construe them in a light most favorable to the plaintiff."  *Perez v. Nike, Inc.*, *supra*.  Here, as discussed above, Columbia has asserted factual allegations that, accepted as true, provide ample support for Columbia's bad faith and intentional interference claims.  Columbia's request for punitive damages is really just a request for damages resulting from the conduct described.  Challenges to the damages alleged are not properly the subject of a motion to dismiss, because the propriety of damages allegations turn on facts that need to be developed through further litigation.  *James River Ins. Co. v. Breitenbush Hot Springs & Conference Center*, *supra*.

In any event, Columbia has sufficiently alleged facts in support of its claim that FM "acted with malice, showed a reckless and outrageous indifference to a highly unreasonable risk of harm, and acted with a conscious indifference to the welfare of others."  In this regard, *Carpenter v. Land O' Lakes, Inc.*, 880 F.Supp. 758 (D.Or. 1995), is instructive.  *Carpenter* was a

**Page 31** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

products liability case.  An Oregon statute, O.R.S. 30.295(1), provides that punitive damages are

recoverable in a products liability case only if "it is proven by clear and convincing evidence that

the party against whom punitive damages is sought has shown a wanton disregard for the health,

safety and welfare of others."  In *Carpenter*, the defendant moved to strike the plaintiff's

punitive damages allegation, contending that the allegations did not meet the statutory standard.

The court disagreed:

> This court has determined that the Carpenters have alleged
> sufficient facts to state a product liability claim.  The Carpenters
> have also alleged that "defendants concealed from plaintiffs and
> other purchasers of dairy feed their knowledge of the defects in
> their feed. …Those allegations are sufficient to state a claim for
> punitive damages under O.R.S. 30.925.

*Id.* At 764.

Here, the Court should similarly deny FM's motion to strike the punitive damages claims.

As discussed in detail above, Columbia has alleged sufficient facts to state a claim for bad faith

and intentional interference.  Columbia alleges that FM made continued requests for information

"solely for purposes of delay and harassment, and FM never intended to fairly consider

Columbia's Business Interruption claim."  (Complaint, paragraph 29).  Columbia alleges that

"FM was on notice that its failure to timely or fully pay monies owed to Columbia under the FM

Policy would place Columbia in serious financial peril."  (Complaint, paragraph 34).  In its bad

faith claim, Columbia alleges that FM unreasonably delayed resolution of Columbia's claim

through repeated and unnecessary requests for information and that FM placed its own financial

interests above the interests of its insured.  (Complaint, paragraph 46).  In its intentional

interference claim, Columbia alleges that FM violated O.R.S. 746.230(1)(f) by failing to attempt,

in good faith, to promptly and equitably settle Columbia's claims. (Complaint, paragraph 55).

**Page 32** - **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS
AND/OR STRIKE**

Columbia alleges that FM knew, or should have known, that its failure to pay would interfere with Columbia's existing and prospective economic relations.  (Complaint, paragraph 56).

All of these allegations easily support Columbia's assertion that FM "acted with malice, showed a reckless and outrageous indifference to a highly unreasonable risk of harm, and acted with a conscious indifference to the welfare of others."  (Complaint, paragraphs 49, 60). Columbia's allegations are therefore sufficient to state a claim for punitive damages, and FM's motion should be denied.

## IV.    CONCLUSION

For all of the reasons discussed above, FM's motions to dismiss are without merit.  FM's motions should all be denied, and Columbia should be allowed to proceed with prosecuting the claims Columbia has pleaded.


DATED:  February 13, 2008.          BALL JANIK LLP


                              By:  _/s/ James T. McDermott_____
                                   JAMES T. McDERMOTT
                                   OSB No. 933594
                                   RICHARD J. STONE
                                   OSB No. 940021
                                   KEVIN S. MAPES
                                   OSB No. 020079
                                   Telephone:  503-228-2525
                                   Attorneys for Plaintiff


**Page 33 - PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR STRIKE**

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2008, a true and correct copy of the foregoing

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS AND/OR**

**STRIKE** was served upon the following parties by CM/ECF:

      Stuart D. Jones
      Bullivant Houser Bailey PC
      300 Pioneer Tower
      888 SW Fifth Avenue
      Portland, OR 97204-2089
      Attorneys for Defendant

Dated this 13th day of February, 2008.

                    BALL JANIK LLP


                    By: */s/ Annie LaHaie*                
                          Annie LaHaie
                          Legal Assistant